OPPOSING COUNSEL
COPY

STATE OF MICHIGAN
IN THE KENT COUNTY 17TH JUDICIAL CIRCUIT COURT

| | |
|---|---|
| AMBIANCE GR<br>2522 TAFT AVE SW<br>GRAND RAPIDS, MI 49519-2264<br>　　　　　　　　　　　Plaintiff,<br><br>V<br><br>CITY OF GRAND RAPIDS<br>GRAND RAPIDS POLICE DEPARTMENT<br>& GRAND RAPIDS POLICE OFFICERS<br>1 MONROE CENTER NW<br>GRAND RAPIDS, MI 49503<br>　　　　　　　　　　　Defendants. | **COMPLAINT**<br><br>23- 12510 CZ<br><br><br>CHRISTINA ELMORE<br>(P-68216)<br><br><br>Hon: |

_____/

Law Offices of Tyrone Bynum PLLC
By: Tyrone Bynum (P82427)
Attorney for the Plaintiff
7125 Hearley Street
Suite #433
Ada, MI 49301
(616) 608-7409
_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

### COMPLAINT

Plaintiff AMBIANCE GR states:

#### Jurisdiction and Venue

1. Plaintiff is a Michigan Licensed Limited Liability Corporation in the city of Grand Rapids, Kent County, Michigan.

2. Defendants City of Grand Rapids, Grand Rapids Police Department, Grand Rapids Police Officers are located in the city of Grand Rapids, Kent County, Michigan.

3. All acts related to this incident happened at 106 Pearl Street NW, Grand Rapids, Kent, Michigan 49503.

4. The amount in controversy in this civil action exceeds $25,000.00.

## Count I-Discrimination

5. Plaintiff incorporates by reference paragraphs 1-4

6. *Equal protection.* No state shall "deny to any person within its jurisdiction the equal protection of the laws." US Const amend XIV, §1. To prove an equal protection claim when neither a fundamental right nor suspect class is at issue, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, the plaintiff must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 US 562, 564 (2000). When a law adversely affects a "suspect class" such as race, alienage, or national origin or invades a "fundamental right" such as speech or religious freedom, "strict scrutiny" generally governs. *City of Cleburne v Cleburne Living Ctr, Inc*, 473 US 432, 440 (1985)

7. Elliot-Larsen Civil Rights Act 453 of 1976 define civil rights; to prohibit discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight, familial status, or marital status.

8. Ambiance GR's ownership, prior to opening, met with Grand Rapids Police Department and City officials and administration. Purpose was to address any possible concerns either party may have and to develop a plan of cooperation in order that Ambiance GR would be a positive attribute to the downtown business district.

9. After Ambiance GR opened and alleged concerns surfaced, Ambiance GR's Black ownership sought advice, cooperation, and assistance from Grand Rapids city officials and Grand Rapids Police Officers. Several City elected officials, administrators, employees, and Grand Rapids Police Department Officers (GRPDO) were consulted, informed, and solicited for assistance in dealing with public and private concerns.

10. Ambiance GR requested police presence during closing hours. It was not provided. Ambiance GR requested increase police presence. It was not provided.

11. The City has provided such accommodation services of steady and increased patrol and police traffic control activity to white businesses over the past 30 years, including the Arena and Devos Center during the let out periods of business hours.

12. This included crowd and traffic control.

13. (City Reps) had specific detailed knowledge of the dangers /hazards re: crowd conjugating problems and intentionally failed to address it: Ambiance GR ownership met with the city to discuss the following issues;

    (a) The warned risk and threat of such lawlessness hazard to the business of conjugation being a problem for prior minority business establishments and the

big preventative steps the Ambiance GR owners took in working with the Police Dept. Officials to work out an effective plan with the Police 2-3 yrs prior to opening. And the promise of support and help from the Police to address such hazards should they occur.

(b). Once opened the conjugating disruptive conduct by hundreds of non-patrons outside the door of Ambiance GR property on public streets-sidewalks made known to City Officials and observed by them

(c) The blatent disregard of 911 phone calls for assistance on traffic control by Ambiance employees, representatives, and other neighboring establishments observing and notifying Police of violations of all kind of public traffic laws - some of the conduct specifically observed by City Officials including the shooting into one of the windows at the business

(d) City Officials directly acknowledging the violation problems in meetings, making promises to deliver service and then later on stating they cannot control the loiterers and traffic violators

(e) Police Officials, during the crisis, asserting their exclusive jurisdiction over public streets (and the restricted legal authority of the Ambiance Private Security) BUT then failing to provide or take care of the service.

14. Before, during, and after Ambiance GR's presence in downtown Grand Rapids, when similarly positioned white owned downtown businesses requested the same increase patrol services, that Ambiance GR was seeking, the City found a way to provide that increased level of police protection and services that it had denied Ambiance GR.

15. More recent when the white area downtown businesses requested the same increase patrol services that Ambiance was seeking the City found a way to provide that increase level of police protection and services that it had denied to Ambiance.

16. When White businesses complained about crimes related to the pedestrian Blue Bridge in downtown Grand Rapids, over the Grand River, the city of Grand Rapids closed the Bridge at midnight every day.

17. Ambiance GR hired 2 private security services (Phoenix Security was one of them). Even though Grand Rapids Police restricted the private security company's area of security to inside the Ambiance GR, the city of Grand Rapids later contracted with Phoenix Security for their own purposes.

18. When the security companies, contracted with Ambiance GR, were instructed by Grand Rapids Police officers the weren't allowed to provide any services outside the walls of Ambiance, Grand Rapids Police made no effort to police the outside area of Ambiance

GR. And even though Ambiance GR requested that GRPD come during close of business hours as a deterrent to possible violence.

19. When police responded to a criminal complaint(s), even though the issue was not associated with Ambiance GR, the police associated the criminal complaint with Ambiance GR. Even though Ambiance GR had nothing to do with the criminal complaint

## Count II-Gross Negligence

20. Plaintiff incorporates by reference paragraphs 1-19

21. The act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). To be "the proximate cause" of an injury, MCL 691.1407(2), the defendant's gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson v City of Detroit*, 462 Mich 439, 462, 613 NW2d 307 (2000); *see also Ray v Swager*, 501 Mich 52, 65, 903 NW2d 366, *on remand*, 321 Mich App 755, 909 NW2d 917 (2017).
Michigan Causes of Action Formbook ch 10 (Kaitlin A. Brown et al eds, ICLE 2d ed 2020), at https://www.icle.org/modules/books/chapter.aspx?lib=litigation&book=2020555610&chapter=11 (last updated 12/01/2023).

22. Basic elements include the following:

    a. The defendant owed a legal duty to the plaintiff.
    b. The defendant breached or violated that legal duty.
    c. The defendant's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury might result.
    d. The plaintiff suffered damages.
    e. The defendant's breach was *the* proximate cause of the plaintiff's damages.

23. Plaintiff constitutionally protected rights that Defendants violated include the following:

    a. the right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment

24. Defendant police officers, acting under color of state law, selectively increased their patrol and traffic control based on race, outside policies and training.

25. Defendant Officers violation of their affirmative duties, their lack of intervention, and then falsely accusing Ambiance GR as the cause of the complaint of criminal actions when the criminal event was not connected to Ambience GR.
26. Defendant Officers, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights. Further, their actions showed deliberate indifference to Plaintiff's concerns, safety, and the safety of their customers. Plaintiff's serious safety concerns, which were similar to those of White businesses similarly situated. Denial of Plaintiff's 14th Amendment right to equal protection and equal rights was an intentional deprivation of Plaintiff's constitutionally protected rights.
27. Defendant Officers, City administrators, and employees culturally coordinated willful, wanton, and deliberate conduct contributed to Plaintiff developing a negative reputation created in the downtown business community.
28. As a direct and proximate result of Defendant Officers' conduct, Plaintiff suffered physical and emotional injury, loss of revenue, loss of reputation, and other constitutionally protected rights described above.
29. Defendant's, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference of a discriminatory nature to Black business owners, such as Plaintiff, Ambiance GR.
30. As a direct and proximate result of these policies, practices, and customs, Plaintiff was deprived of Plaintiff's constitutionally protected rights described above.

PLAINTIFFS REQUEST that this court enter judgment against Defendants in an amount consistent with the damages sustained in Count I and Count II.

**Therefore,** Plaintiff demand a judgment of more than $25,000.00 against the Defendants plus interest, cost, and reasonable attorney fees.

Sincerely,

Date December 20, 2023

/s/Tyrone Bynum
Tyrone Bynum (P82427)

## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Under MCR 2.508, the Plaintiff request that all of the counts be tried by a Jury.

                                 Respectfully Submitted

                                 Counsel For Plaintiff

By: _____
                                 Tyrone Bynum (P82427)
                            Law Offices of Tyrone Bynum PLLC
                                   7125 Headley Street
                                       Suite #433
                                       Ada, MI 49301
                                       (616) 608-7409
                  Tyrone@LawOfficesofTyroneBynumPLLC.com

## PROOF OF SERVICE

I hereby certify that I personally served the above DEFENDANT SUMMONS AND COMPLAINT pursuant to MCR 2.105, regarding the above matter on December 20, 2023 to the following:

                               CITY OF GRAND RAPIDS
                               GRAND RAPIDS POLICE DEPARTMENT
                               & GRAND RAPIDS POLICE OFFICER
                               1 MONROE CENTER NW
                               GRAND RAPIDS, MI 49503

/s/ Tyrone Bynum_____
Tyrone Bynum