UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AMBIANCE GR<br>2522 TAFT AVE SW<br>GRAND RAPIDS, MI 49519-2264<br>JAMAL CHILTON              Plaintiff, | **COMPLAINT**<br>Civil Action No. 1:23-cv-1335<br>Jury Trial Requested |

V

| | |
|---|---|
| CITY OF GRAND RAPIDS &<br>UNKNOWN GRAND RAPIDS POLICE OFFICERS<br>1 MONROE CENTER NW<br>GRAND RAPIDS, MI 49503 | Hon: Jane M. Beckering |
| | Defendants. |

_____/

| | |
|---|---|
| Tyrone Bynum (P82427)<br>*Attorney for Plaintiff*<br>Law Offices of Tyrone Bynum PLLC<br>7125 Hearley Street, Suite 433<br>Ada, MI 49301<br>Ph: (616) 608-7409<br>tyrone@lawofficesoftyronebynumpllc.com | Elizabeth J. Fossel (P41430)<br>Sarah J. Hartman (P71458)<br>Megan E. Luptowski (P84826)<br>*Attorneys for City of Grand Rapids*<br>City of Grand Rapids Law Department<br>300 Monroe Ave. NW, Ste. 620<br>Grand Rapids, MI 49503<br>Ph: (616) 456-1318<br>efossel@grand-rapids.mi.us<br>shartman@grand-rapids.mi.us<br>mluptowski@grand-rapids.mi.us |

_____/

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the complaint.

**FIRST AMENDED COMPLAINT**

Plaintiff AMBIANCE GR states:

### Jurisdiction and Venue

1. Plaintiff is a Michigan Licensed Limited Liability Corporation in the city of Grand Rapids, Kent County, Michigan.

2. Defendants City of Grand Rapids, Grand Rapids City Manager, Grand Rapids Police Officers are located in the city of Grand Rapids, Kent County, Michigan.

3. All acts related to this incident happened at 106 Pearl Street NW, Grand Rapids, Kent, Michigan 49503.

4.  The amount in controversy in this civil action exceeds $25,000.00.

## Statement of Claim

## Count I-Discrimination

5.  42 U.S. Code § 1983 – Civil action for deprivation of rights;

> *Every person who, under color of any statute, ordinance, regulation, custom, or*
>
> *usage, of any State or Territory or the District of Columbia, subjects, or causes to*
>
> *be subjected, any citizen of the United States or other person within the*
>
> *jurisdiction thereof to the deprivation of any rights, privileges, or immunities*
>
> *secured by the Constitution and laws, shall be liable to the party injured in an*
>
> *action at law, suit in equity, or other proper proceeding for redress, except that in*
>
> *any action brought against a judicial officer for an act or omission taken in such*
>
> *officer's judicial capacity, injunctive relief shall not be granted unless a*
>
> *declaratory decree was violated or declaratory relief was unavailable. For the*
>
> *purposes of this section, any Act of Congress applicable exclusively to the District*
>
> *of Columbia shall be considered to be a statute of the District of Columbia.*

42 USCS § 2000d

> *No person in the United States shall, on the ground of race, color, or national*
>
> *origin, be excluded from participation in, be denied the benefits of, or be*
>
> *subjected to discrimination under any program or activity receiving Federal*
>
> *financial assistance.*

6.  Plaintiff incorporates by reference paragraphs 1-5

7. *Equal Protection.* No state shall "deny to any person within its jurisdiction the equal protection of the laws." US Const amend XIV, §1. To prove an equal protection claim when neither a fundamental right nor suspect class is at issue, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, the plaintiff must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 US 562, 564 (2000). When a law adversely affects a "suspect class" such as race, alienage, or national origin or invades a "fundamental right" such as speech or religious freedom, "strict scrutiny" generally governs. *City of Cleburne v Cleburne Living Ctr, Inc*, 473 US 432, 440 (1985)

The *Equal Protection* clause of the Fourteenth Amendment prohibits local governments from discriminating on the basis of race. The Supreme Court of the United States has recently held that a city policy violating a constitutional right is cognizable under 42 U.S.C.S. § 1983, even if that policy is but a single decision by municipal policymakers. Brookins v. Michigan, 1987 U.S. Dist. LEXIS 15678, *1

The Equal Protection clause of the Fourteenth Amendment prohibits local governments from **discriminating** on the basis of **race**. The Supreme Court has recently held that a city policy violating a constitutional right is cognizable under § 1983, even if that policy is but a single decision by municipal policymakers. *Pembaur v. **City of** Cincinnati*,  U.S.  , 106 S.Ct. 1292 (1986). The **complaint** alleges that the **City** of Detroit has a policy of not funding **minority business** enterprises because of their minority status. Brookins v. Michigan, 1987 U.S. Dist. LEXIS 15678, *6

8. *Elliot-Larsen Civil Rights Act 453 of 1976* define civil rights; to prohibit discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight, familial status, or marital status.

9. Ambiance GR's Black ownership, prior to opening, met with Grand Rapids Police Department and City officials and administration (EXHIBIT 1). Purpose was to address any possible concerns either party may have and to develop a plan of cooperation in order that Ambiance GR would be a positive attribute to the downtown business district.

10. After Ambiance GR opened and alleged concerns surfaced, Ambiance GR's Black ownership sought advice, cooperation, and assistance from Grand Rapids city officials and Grand Rapids Police Officers. Several City elected officials, administrators, employees, and Grand Rapids Police Department Officers (GRPDO) were consulted, informed, and solicited for assistance in dealing with public and private concerns. (EXHIBITS 2-5)

11. Ambiance GR requested police presence during closing hours. It was not provided. Ambiance GR requested increased police presence. It was not provided.

12. The City has provided, and still do, such accommodation services of steady and increased patrol and police traffic control activity to white owned businesses over the past 30 years, including the Van Andel Arena and Devos Place Center during the let out periods of business hours.

13. This included crowd and traffic control. And they still do on a regular basis.

14. (City Reps) had specific detailed  knowledge of the dangers/hazards re: crowd congregating problems and intentionally and or negligently failed to address it: Ambiance GR ownership met with the city to discuss the following issues;

(a)  They were told of the risk and threat of such a lawless hazard to the business, of people congregating, being a problem for prior minority business establishments and the big preventative steps the Ambiance GR owners took in working with the Police Dept. Officials to work out an effective plan with the Police 2-3 years prior to opening. And the promise of support and help from the Police to address such hazards should they occur.

(b). Once opened the congregating disruptive conduct by hundreds of non-patrons, outside the door of Ambiance GR property on public streets-sidewalks, were made known to City Officials and observed by them.

(c)  The blatant disregard of 911 phone calls for assistance on traffic control, made by Ambiance GR employees, representatives, and other neighboring establishments observing and notifying Police of violations of  all kind of public traffic laws - some of the conduct specifically observed by City Officials including the shooting into one of the windows at the business, was intentional and grossly negligent.

(d) City Officials directly acknowledging the violation problems in meetings, making promises to deliver service, and then later on stating they cannot control the loiterers and traffic violators (EXHIBIT 2-6).

 (e) Police Officials, during the crisis, asserting their exclusive jurisdiction over public streets (and the restricted legal authority of the Ambiance GR Private Security) failed to provide or take care of the service they denied Ambiance GR.

15. Before, during, and after Ambiance GR's presence in downtown Grand Rapids, when similarly positioned white owned downtown businesses requested the same increase patrol services, that Ambiance GR was seeking, the City found a way to provide that increased level of police protection and services that it had denied Ambiance GR.

16. More recent, when the white area downtown owned businesses requested the same increased patrol services that Ambiance GR was seeking, the City found a way to provide that increase level of police protection and services that it had denied Ambiance GR. (EXHIBIT 6)

17. When White owned businesses complained about crimes related to the pedestrian Blue Bridge in downtown Grand Rapids, over the Grand River, the city of Grand Rapids took action, that included closing the Bridge over night. Closing Blue Bridge weekend nights a 'proactive' step to promote downtown safety - mlive.com Published June 06, 2023 4:28 PM

18. Ambiance GR hired 2 private security services (Phoenix Security hired December 31, 2021. Top Breed Security Service hired approximately March 1, 2022). Even though Grand Rapids Police restricted the private security company's area of security to inside Ambiance GR, the city of Grand Rapids later contracted with Phoenix Security for their own purposes.

19. When the security companies, contracted with Ambiance GR, were instructed by Grand Rapids Police officers that the Security Company staff weren't allowed to provide any services outside the walls of Ambiance GR, Grand Rapids Police made no effort to police the outside area of Ambiance GR. Even though Ambiance GR requested that GRPD come during close of business hours as a deterrent to possible violence.

20. When police responded to a criminal complaint(s), even though the issue was not associated with Ambiance GR, the police associated the criminal complaint with Ambiance GR. Even though Ambiance GR had nothing to do with the criminal complaint

21. Damages incurred were loss of investment for renovations ($approximately $1,000.000), rent while renovations occurred, business reputation, and future income ($2,000.000.00)

**Count II-Gross Negligence**

22. Plaintiff incorporates by reference paragraphs 1-21

23. The act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). To be "the proximate cause" of an injury, MCL 691.1407(2), the defendant's gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson v City of Detroit*, 462 Mich 439, 462, 613 NW2d 307 (2000); *see also Ray v Swager*, 501 Mich 52, 65, 903 NW2d 366, *on remand,* 321 Mich App 755, 909 NW2d 917 (2017).

Michigan Causes of Action Formbook ch 10 (Kaitlin A. Brown et al eds, ICLE 2d ed 2020), at https://www.icle.org/modules/books/chapter.aspx?lib=litigation&book=2020555610&chapter=11 (last updated 12/01/2023).

24. Basic elements include the following:

   a. The defendant owed a legal duty to the plaintiff.
   b. The defendant breached or violated that legal duty.
   c. The defendant's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury might result.

    d.  The plaintiff suffered damages.

    e.  The defendant's breach was *the* proximate cause of the plaintiff's damages.

25. Plaintiff constitutionally protected rights that Defendants violated include the following:

    a.  the right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment

26. Defendant police officers, acting under color of state law, selectively increased their patrol and traffic control based on race, outside policies and training.

27. Defendant Officers violation of their affirmative duties, their lack of intervention, and then falsely accusing Ambiance GR as the cause of the complaint of criminal actions when the criminal event was not connected to Ambiance GR.

28. Defendant Officers, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights. Further, their actions showed deliberate indifference to Plaintiff's concerns, safety, and the safety of their customers. Plaintiff's serious safety concerns, which were similar to those of White businesses similarly situated. Denial of Plaintiff's 14th Amendment right to equal protection and equal rights was an intentional deprivation of Plaintiff's constitutionally protected rights. Defendant Officers openly stated that they would not police Black/Hip Hop events.

29. Defendant Officers, City administrators, and employees culturally coordinated willful, wanton, and deliberate conduct that contributed to Plaintiff developing a negative reputation created in the downtown business community.

*Local governing bodies can be sued directly under 42 U.S.C.S. § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, every § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels. Marchese v. Lucas, 758 F.2d 181, 181*

30. As a direct and proximate result of Defendant Officers and City Officials conduct, Plaintiff suffered emotional injury, loss of business, loss of revenue, loss of reputation, and other constitutionally protected rights described above.

31. Defendant's, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference of a discriminatory nature to Black business owners, such as Plaintiff, Ambiance GR.

32. As a direct and proximate result of these policies, practices, and customs, Plaintiff was deprived of Plaintiff's constitutionally protected rights described above.

33. **Police Officers Role;**

- Grand Rapids Police Officers have discriminated against Ambiance GR, its customers, and owners because they are for the most part African American. April 19th, 2021 (EXHIBIT 3) Jonathan email Lt Dean to request Special Events Permit for public safety Alvin Hills IV met with Lt Dean and Evette Pittman 4/19/22 1pm virtually. Alvin met with Lt. Patrick Dean and City of GR Special Events Manager Evette Pittman virtually to discuss the process for Ambiance to apply for special events security as instructed by City Manager Mark Washington. Lt. Dean expressed that he doesn't have staffing available to cover this request this week or the following weeks to come. He instructed that if he posted this overtime opportunity no officer would accept due to his officers not having the appetite to police "these types of events" alluding to African American/Hip Hop based events in the wake of the recent killing of Patrick Lyoya. Alvin requested for Lt. Dean to allow Ambiance to request security services and see if any offers were accepted. Evette Pittman added that GRPD has more than enough officers to secure the DeVos and Van Andel through the Convention Arena Authority and asked could the department approach it in a similar manner. Lt Dean was adamant that none of his

officers would accept, so there's no reason for us to submit a formal special events

security request. Due to the climate created after the Patrick Lyoya shooting, Lt. Dean

expressed that any African American/Hip Hop led event happening GRPD would not be

interested in securing those spaces. He expressed that the current perception by the public

and anticipated black community retaliation for the killing of Patrick Lyoya would not be

a space his officers would be interested in securing. Lt. Dean discouraged Ambiance

from submitting a formal request. Alvin reported this back to City Manager Mark

Washington. Nothing happened. This was a violation of Plaintiff's right to equal

protection under the law. Lt. Dean expressed that any African American/Hip Hop led

event happening GRPD would not be interested in securing those spaces. Lt. Dean

included his entire police force in that statement. Though White citizens were demanding

public officials defund police departments and demonstrating against law enforcement, Lt

Dean stated only Black/Hip Hop events would be resisted. Mark Washington had notice

of this conversation and yet nothing happened. Mark took no corrective action against the

Grand Rapids Police Department.

     o   Affidavits have been attached as EXHIBIT A and Several additional copious

         notes have been attached as EXHIBITS 1-8 as a part of Ambiance Engagement

         Record with Grand Rapids Police Department, Mark Washington, other city staff,

         and Grand Rapids City Commissioners as Engagement Record. Associated emails

         and records of meeting are a part of these attachments/Exhibits. EXHIBIT B is the

         index of designated unknowns

Lt Dean's statement is clear proof the GRPD has decided, as a police department, that they have

been denying equal public services to Black owned businesses compared to White owned

businesses, based on the belief that Black people didn't support them. The Grand Rapids Police Department have admitted that it is okay for dispatch to hold off relaying a request for help from Black owned businesses unless there was a gun present included in the complaint. Knowing once a gun is made public that the situation has escalated to a most likely deadly level. If there is a large fight don't call us. If there is a large fight it is most likely because of that Black owned business, Ambiance GR. Black citizens aren't required to support police officers in order to receive lawfully required equal services/protection as required by the **Equal Protection Clause of the 14th Amendment** and the **ELLIOTT-LARSEN CIVIL RIGHTS ACT 453 of 1976.** Public service personnel are required to provide public services equally though.

### 37.2302 Public accommodations or services; prohibited practices.

Sec. 302. Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

(b) advertisement, **notice**, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service will be refused, withheld from, or denied an individual because of religion, race, color, national origin, age, sex, or marital status, or that an individual's patronage of or presence at a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable because of religion, race, color, national origin, age, sex, or marital status.

June 5, 2022, (EXHIBIT 5) Jamiel was making his management rounds checking in with staff and our security team on the inside of Ambiance GR. The night was busy and our patrons were having a great time. Jamiel went to check in our entry door security staff when he noticed a group of people fighting in Ellis parking lot. He requested that our security break up the fight. Eric Goodson of Phoenix Security expressed he's been informed by police and City officials to not break up any altercations in the public right of way or his security company could be at risk of losing bonding. Also, police and City officials stated that our security couldn't publicly carry guns to secure the public sidewalk and right of way. The public right of way is GRPD's responsibility and they did not want private entities securing their jurisdiction. (We were informed of this at the public safety meeting on 4/21/22 by GRPD Captain Vincent Riley). Jamiel told the security team he wanted them to break the fight up before it became more serious and violent. Once our security staff declined to break-up the fight, Jamiel told Alvin to call the police. While Alvin was on the phone with the police Jamiel saw someone that was involved in the fight run to a truck that was parked illegally outside of Ambiance GR and grab two guns. Jamiel told Alvin to tell the police that someone had guns and was shooting. Jamiel told our security to secure Ambiance and not to let anyone in the door. Jamiel told Ambiance GR staff to look after our patrons on the inside of Ambiance. Alvin called the police 5 times beginning around 11 PM, prior to the shooting, asking them to come deescalate the parties involved in an altercation. The parties were fighting on the sidewalk which is a public right of way in front of the Ellis Parking lot near Freshii and Alvin wanted the police to respond to prevent any harmful actions from occurring. GRPD continuously informed Ambiance and their security detail that they are

responsible for protecting the public right of way and that they didn't want private security policing these spaces. The dispatcher asked if we saw a weapon then they would come. The fight continued and Alvin called 911 again to inform dispatchers that someone had a gun. The dispatcher then mentioned that it's not illegal for people to own guns. While on the call with the dispatcher shots rang out. Armonie Lee Acklin, age 25, was murdered as the victim that night. The police then responded with a robust police presence. This was the outcome the Ambiance team feared and tried to prevent years prior to and during continuous public safety requests to the City of Grand Rapids and GRPD. The team knew that all they'd done to survive COVID-19 and open this business was gone down the drain.

Grand Rapids Police Call Management Manual states in section D(2) Decision Points:

a. If the call taker has reason to believe during the initial contact, that an immediate patrol response is necessary, they shall enter the CAD incident immediately. Directly after, they shall complete the sequence of questions and record the information in the CAD incident.

b. Call takers receiving calls of crimes in progress shall attempt to keep callers on the line adding comments to the CAD incident if the caller can safely provide pertinent information or until officers secure the scene.

In the Grand Rapids Police Department Call Management Manual's CALL PRIORITIZATION section F(1) The call taker will assign a dispatch priority to the call for service based on current CAD incident types. If necessary, the call taker shall assign a higher or lower priority than the default value provided by CAD (Computer Aided Dispatch) based on answers obtained during call intake.

Section F(2) A patrol unit shall be dispatched immediately, upon unit availability. If a patrol unit cannot be dispatched within sixty (60) minutes, then the watch commander shall be notified. Once notified, the watch commander shall take reasonable steps to alleviate the call backlog which could include cancelation.

Plaintiff stated already that Alvin called 5 times around 11 PM. Alvin informed the police department of the presence of guns and a large fight currently occurring. Serious criminal activity in progress with lethal weapons present. Obviously this incident was not given the highest priority since the calls began at around June 4, 2022 at 11 PM or the police department proved Lt. Dean's words rang true and GRPD Officers intentionally ignored Ambiance's calls for help. The shooting took place June 5, 2022, at 12:15 AM.

**City Leadership Role;**

34. Plaintiff incorporates by reference paragraphs 1-33

35. Local governing bodies can be sued directly under 42 U.S.C.S. § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, every § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels.

*Marchese v. Lucas, 758 F.2d 181, 181*

- Grand Rapids City leadership sought to convince Plaintiff's owners to shift their focus from the police and, instead, show support for the police and their racist policies using their political cache to influence members of the City Commission's policies on policing.

City Leadership, instead of addressing the failed policy that allows Police Officers to openly say they are not going to police Black/Hip Hop events, also sought to influence the Plaintiff to not expose the discrimination and negligence experienced to the media and public at large. In exchange for not  exposing the discrimination and filing an immediate law suit the city would negotiate to financially deleverage Ambiance GR. And after the GRPD advised plan failed GRPD refused suggestions from the Ambiance GR owners while the City Leadership sat on his hands until a group of White owners complained in a collective letter (EXHIBIT 7) and Ambiance GR closed permanently

- November 30th, 2022
    - o   Public Safety Update City Manager Mark Washington
    - o   Near Term Redeployment of some officers downtown to increase police visibility
    - o   Downtown Grand Rapids Incorporated Bill Kurt sent out correspondence
    - o   Non-Black Owned businesses called for this and near term redeployment was implemented. Ambiance called for this and was not granted this commitment of support.

36. Damages incurred were loss of investment for renovations ($approximately $1,000.000), rent while renovations occurred, business reputation, and future income ($2,000.000.00).

**After Closing**

- Senita conversation where she instructed she would meet with City Attorney Anita Hitchcock and for us to hold off on filing a claim against the City of Grand Rapids
- 11/9/22 Jamiel called Commissioner Ysasi to discuss closing

- December 2022 Jamiel and Jonathan met with Commissioner Ysasi and City Manager Mark Washington to discuss accountability

The decision of City Manager Mark Washington and the City of Grand Rapids to redeploy police forces to downtown Grand Rapids in partnership with the Kent County Sheriff's Office and implement other safety measures for downtown Grand Rapids stated in the Safety Update email from the City Manager on November 30, 2022, stands as a stark testament to the deeply troubling disparities in their response to safety concerns. The profound disappointment stems from the stark contrast between the action taken after predominately white-owned businesses and stakeholders raised similar issues and the prolonged silence in response to Ambiance GR's consistent and heartfelt pleas throughout the entirety of 2022.

Ambiance GR tirelessly articulated and documented valid concerns, expressing the urgent need for increased safety measures in downtown Grand Rapids. The Mayor later agreed with Ambiance GR's ownership (EXHIBIT 5). The city's belated reaction only underscores a disturbing pattern of neglect and unequal treatment. The closure of Ambiance GR on November 9, 2022, now seems like a poignant symbol of a Black business left to fend for itself, its pleas for increased safety measures and support coming up short.

It is disheartening to witness a municipality prioritizing the safety of certain businesses and stakeholders over others based on ownership demographics. A November 15th story from Fox 17 News reported on the growing concerns over violence in Downtown Grand Rapids. In the Fox 17 News story they spoke with over a dozen businesses that voiced the need for more police and safety measures. This is one of many news reports centered around public safety concerns from 2022. 15 days after this news report City Manager Washington released the Safety Update letter

stating how the City of Grand Rapids were immediately addressing the violence and safety issues. This selective responsiveness not only perpetuates systemic inequities but sends a chilling message about whose concerns are deemed worthy of immediate attention and decisive action.

The emotional toll on the Ambiance GR staff and owners is immeasurable, having endured a year of grappling with safety issues, only to witness the city's decisive response following the echoes of privileged voices. The palpable sense of betrayal reverberates through the community, which now stands abandoned by those entrusted with ensuring its safety.

The City of Grand Rapids must confront the glaring disparities in its approach to community safety. The events of November 30, 2022, serve as a poignant reminder of the need for systemic change, a call for a fair and unbiased commitment to the well-being of all businesses, irrespective of the color of their skin or the ownership of their businesses.

- City Officials claim what Ambiance GR was asking for couldn't be done. Even though, immediately after Ambiance GR closed, the City Manager announced a plan to increase police presence in the downtown corridor. In addition, the City of Grand Rapids hired the same private security company that was contracted with Ambiance GR. The same security company that was instructed to not secure the curtilage surrounding Ambiance GR. The City of Grand Rapids modified their policy and increased police presence for the remaining White owned businesses something the City and the Grand Rapids Police Department said it would not be done for Black or Hip Hop events. GRPD said that they were afraid of the community because of the Patrick Lyoya killing. But GRPD continued their undercover arrest, reasonable suspicion traffic stops, undercover surveillance operations, arresting Black members of the community. GRPD had no fear of continuing

all of the bad things in the Black neighborhood with no regard for the reaction of the

community over the killing of Patrick Lyoya. GRPD was never going to do anything to

improve relations in the Black community because they have now confessed to racial

animus toward the Black community.

- May 3, 2022, (EXHIBIT 4) Lacy Jones met with Commissioner Lenear at

  Ambiance Kitchen & Lounge to discuss the ongoing situations that Ambiance had

  been experiencing in downtown Grand Rapids. Mr. Jones told Commissioner

  Lenear how diverse Ambiance was and that we had been very disruptive (in a

  good way) to the downtown business district in regards to night time

  entertainment options. I informed her that nearby white own businesses did not

  like us being there and especially Flannigan's. I informed her that we had not

  gotten the support from the police that we needed in order to thrive and have

  longevity as a black owned Kitchen & Lounge  in downtown Grand Rapids. I told

  her that we had a loitering problem with people hanging outside of our business. I

  told her that the people who could not get into Ambiance would hang out on the

  sidewalks and in the parking lot next to our business. I told her that the Mayor and

  the City Manager were supposed to help us with this problem but the help never

  happened. I informed her that if a situation happened outside that warranted a

  police presence we had to call 911, but officers would not come & we were told

  by the police dispatcher that they (police) would not send an officer unless a gun

  was involved. I explained that we had been meeting with the police and city

  officials since 2018 trying to formulate a partnership with them so that Ambiance

  would be properly protected as a Black owned business in downtown Grand

Rapids. I explained that to her that we took a proactive approach to ensuring a

strong partnership with the police but we were unsuccessful. I talked to her about

how the Mayor and the City Manager were supposed to help us with securing

police presence and a strong relationship with the police but even when they tried

to solidify the relationship between Ambiance and the Police Department they

were met with strong resistance and to "no, we're not doing that" by the

police. She responded by saying " I don't know why they're not doing that they do

it for every white owned bar in downtown Grand Rapids, what makes your bar

any different, they should give Ambiance the same support that they give to the

BOB and all the other white owned bars. We all know how they stay parked

outside of the BOB and other white owned bars, they should do the same for

you".  She then stated "now you know I'm a firm believer in equality". I told

Commissioner Lenear that I wasn't surprised by her response because that is

exactly what she said to the former CEO of Downtown GR Inc. when she

arranged a meeting with the three of us as we discussed me opening a venue in

downtown Grand Rapids and the CEO agreed with her.  Also, she said "you

should never have to tell a police dispatcher that there is a gun involved in a

situation in order to get assistance from the police". I informed her that the City

Manager tried to garner a relationship with Ambiance and the Kent County Police

Department to give us assistance patrolling the outside of the venue as a result of

the Grand Rapids Police Department Refusing the City Manager's directive to

Patrol the outside of Ambiance, but that relationship was later turned down as

well. I told Commissioner Lenear that we even applied for a special permit for

events where we would pay for officers to be present at our events and patrol the

outside of our venue like they do at the Van Andel Arena & DeVos Place but that

was turned down as well. I told Commissioner Lenear how we were visited by a

Lieutenant from the Grand Rapids Police Department at Ambiance prior to

opening one day and how the Lieutenant's conversation with a Grand Rapids

Police Officer was heard as the Lieutenant stated they won't make it through the

summer and he said that prior to even talking with us. I let Commissioner Lenear

know that the Lieutenant told us that the Grand Rapids Police Department does

not want our License & Bonded security team outside carrying guns because they

could get hurt by the Grand Rapids Police Department mistaking them for

criminals If they were outside with weapons when the police department responds

to a disturbance. I told Commissioner Lenear that we told the Lieutenant that we

have a right to protect our business and that we're not doing anything illegal but

the Lieutenant said no, it's not illegal but we don't want that downtown. He said

that he'll have an officer do some outside rounds from time to time and not even 2

weeks later four people were shot in the Ellis Parking Lot by a man who was

never inside of Ambiance and we called the police numerous times about a

potential altercation happening in the Ellis parking lot but were told each time that

if a gun is not involved they are not coming. I informed her that, the officer that

was supposed to do an outside round, arrived after four people were shot and one

died. The Officer chuckled, "man... and I was just about to head this way to do a

round". I told Commissioner Lenear that the Mayor, City Manager and City

Commissioners Joe Jones and Milinda Ysasi were all aware of what we were

dealing with outside of our business and their inability to get us support from the

Grand Rapids Police Department was a travesty and if we were a white owned

establishment the lack of support wouldn't have happened. I also told

Commissioner Lenear, and to make things worse, the City Of Grand Rapids

turned around and hired our licensed and bonded security team to help protect

downtown Grand Rapids... but they weren't allowed to help protect our

business!? Commissioner Lenear said that makes no sense at all.

PLAINTIFFS REQUEST that this court enter judgment against Defendants in an amount consistent with the damages sustained in Count I and Count II.

**Therefore,** Plaintiff demand a judgment of more than $25,000.00 against the Defendants plus interest, cost, and reasonable attorney fees.

Sincerely,

Date February 08, 2024

/s/Tyrone Bynum
Tyrone Bynum (P82427)

## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Under MCR 2.508, the Plaintiff request that all of the counts be tried by a Jury.

Respectfully Submitted

Counsel For Plaintiff

By:     /s/ Tyrone Bynum
        Tyrone Bynum (P82427)
        Law Offices of Tyrone Bynum PLLC
        7125 Headley Street
        Suite #433
        Ada, MI 49301
        (616) 608-7409
        Tyrone@LawOfficesofTyroneBynumPLLC.com

**PROOF OF SERVICE**

I hereby certify that I electronically served the above FIRST AMENDED COMPLAINT
pursuant to MCR 2.105, regarding the above matter on February 08, 2024 to the following:

> CITY OF GRAND RAPIDS
> GRAND RAPIDS CITY MANAGER
> & GRAND RAPIDS POLICE OFFICER
> 1 MONROE CENTER NW
> GRAND RAPIDS, MI 49503

/s/ Tyrone Bynum
Tyrone Bynum