UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AMBIANCE GR
2522 TAFT AVE SW
GRAND RAPIDS, MI 49519-2264
JAMAL CHILTON

Plaintiff,

V

CITY OF GRAND RAPIDS &
GRAND RAPIDS POLICE CHIEF
1 MONROE CENTER NW
GRAND RAPIDS, MI 49503

Defendants.
_____/

**COMPLAINT**
Civil Action No. 1:23-cv-1335
Jury Trial Requested

Hon: Jane M. Beckering

| | |
|---|---|
| Tyrone Bynum (P82427)<br>*Attorney for Plaintiff*<br>Law Offices of Tyrone Bynum PLLC<br>7125 Hearley Street, Suite 433<br>Ada, MI 49301<br>Ph: (616) 608-7409<br>tyrone@lawofficesoftyronebynumpllc.com | Elizabeth J. Fossel (P41430)<br>Sarah J. Hartman (P71458)<br>Megan E. Luptowski (P84826)<br>*Attorneys for City of Grand Rapids*<br>City of Grand Rapids Law Department<br>300 Monroe Ave. NW, Ste. 620<br>Grand Rapids, MI 49503<br>Ph: (616) 456-1318<br>efossel@grand-rapids.mi.us<br>shartman@grand-rapids.mi.us<br>mluptowski@grand-rapids.mi.us |

_____/

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

**SECOND AMENDED COMPLAINT**

Plaintiff AMBIANCE GR states:

**Jurisdiction and Venue**

1. Plaintiff is a Michigan Licensed Limited Liability Corporation in the city of Grand Rapids, Kent County, Michigan.

2. Defendants City of Grand Rapids and Grand Rapids Chief of Police are located in the city of Grand Rapids, Kent County, Michigan.

3. All acts related to this incident happened at or around 106 Pearl Street NW, Grand Rapids, Kent, Michigan 49503.

4. The amount in controversy in this civil action exceeds $25,000.00.

## Statement of Claim

5. Plaintiffs claim is 42 U.S. Code § 1983 – Civil action for deprivation of rights; Plaintiffs claim a violation of Plaintiffs' 14th Amendment Constitutional Right of Equal Protection. Plaintiffs claim that right was violated by the GRPD and the Grand Rapids Chief of Police and the City of Grand Rapids under the color of law. Plaintiffs claim that the Grand Rapids Police Department (GRPD) discriminated against Plaintiffs and violated Plaintiffs' 14th Amendment rights by denying equal protection of the law and openly requiring Plaintiffs to report the presence of a gun, as a required condition, prior to Grand Rapids Police Officers (GRPO) responding to any 911 calls or calls for assistance or calls to report unlawful behavior that Plaintiffs witness because Plaintiffs are African American. As a result, Plaintiffs lost income, were forced to close the business, and have experienced serious mental stress over the collapse of the relationship with lenders associated with the financing of Ambiance GR to the tune of over a million dollars.

Plaintiffs also claim that the Grand Rapids Police Department Chief of Police (Chief), the City Manager (Manager), and Grand Rapids City Commissioners were given numerous notices of the long practiced racial discriminatory policies and practices of Grand Rapids Police Officers toward Ambiance GR. Plaintiffs claim the Chief failed to effectively investigate, train, discipline or address discriminatory practices and because he ratified the illegal acts through his failure to investigate, determine and punish the individual officers concerned. Plaintiffs were openly told by Lt. Patrick Dean, in the presence of City of GR Special Events Manager Evette Pittman, that Grand Rapids Police Officers would not assist with Hip Hop/Black events since the death of Patrick Lyoya. Under the Grand Rapids Police – Manual of Procedures Lt. Patrick Dean is

obligated to report, "Upon observing or otherwise becoming aware of a violation of the Rules, Orders or Procedures, employees shall report the violation to their Supervisor or the Internal Affairs Unit." Therefore, either Lt. Dean violated the Manual of Procedures, as he was clearly aware of the collective discriminatory culture of Grand Rapids Police Officers, and should have been disciplined for violating Rule 3.4 of the Grand Rapids Police – Manual of Procedures, or the Police Chief and the City Manager were informed and were grossly negligent by refusing or simply failing to act and as a result Armonie Acklin was shot and killed June 5, 2022 (even though calls for help began June 4, 2022 around 11:00 PM) based on the Grand Rapids Police Department refusing to respond to calls for help by Plaintiffs and staff until someone could claim to have seen a gun present. Grand Rapids Police Department delayed or refused to respond to numerous calls because individuals associated with Ambiance GR were calling for assistance.

## Count I-Discrimination Violation of Plaintiffs' 14th Amendment Right

6. 42 U.S. Code § 1983 – Civil action for deprivation of rights;

   *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the*

> *purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

7. Plaintiff incorporates by reference paragraphs 1-5

8. There can be no doubt at least since Ex parte Virginia, 100 U.S. 339, 346-347, [10 Otto 339], [25 L. Ed. 676] that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. See Home Tel. & Tel. Co. v. Los Angeles, 227 U.S. 278, 287-296 [57 L. Ed. 510, 33 S. Ct. 312]. The question with which we now deal is the narrower one of whether Congress, in enacting § 1979, meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. Cf. Williams v. United States, 341 U.S. 97 [71 S. Ct. 576, 95 [*186] L. Ed. 774]; Screws v. United States, 325 U.S. 91 [89 L. Ed. 1495, 65 S. Ct. 1031]; United States v. Classic, 313 U.S. 299 [85 L. Ed. 1368, 61 S. Ct. 1031]. We conclude that it did so intend. *Marchese v. Lucas, 758 F.2d 181, 185-186*

9. Plaintiffs had a Constitutional right to equal protection under the law. Plaintiffs had a legal right to equal enforcement, response, and application of the public service of public protection and service provided by the Grand Rapids Police Department.

10. Plaintiffs had the equal right of expectation that when a 14th Amendment right has been violated multiple times by the Grand Rapids Police Department that the offending parties would be investigated, retrained, and or disciplined for their discriminatory application of their sworn duty to the public at large.

11. § 1983 provides a cause of action against a government official who performs discretionary duties in a manner that deprives an individual of a right secured by the Constitution or laws of the United States, if the right was clearly established at the time of the deprivation. *Smith v. Erie Cnty. Sheriff's Dep't, 603 F. App'x 414, 418 (6th Cir. 2015) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))*. "To establish a claim under 42 U.S.C. § 1983, 'a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Scott v. Kent Cnty., 679 F. App'x 435, 438 (6th Cir. 2017) (citation omitted)*. **Smith v. Bauer, 2023 U.S. Dist. LEXIS 57265, *10-11**

12. Though law enforcement officers have discretionary decisional authorities in the field there is no record that would indicate officers, or anyone working for the City of Grand Rapids, can decide, to make as a requirement to request police assistance, one must first visually see a gun before an officer will be dispatched to assist you.

13. Plaintiffs, when calling the police for protection and or requesting assistance with crowd and traffic control or request, through a special events application, the presence of police officers to assist with minimizing disorderly conduct individual police officers have the discretion to refuse to participate for legitimate reasons. But individual officers do not have the right to act collectively to refuse these requests based on the race of the requester(s). And the police department can not use manpower as an excuse when the police department happily and freely provide the same service already to White owned businesses and organization.

14. When a Grand Rapids Police Lieutenant says, to a Black Male Business owner, Police Officers will not assist Hip Hop and Black events because the Black community isn't supporting the police after Patrick Lyoya, a YOUNG BLACK MAN, was killed by being shot, at point blank range, in the back of the head by a Grand Rapids Police Officer. Even though the Black and larger community has expressed their frustration with this alleged murder, Grand Rapids Police have decided to refuse to support the Black community with their discretionary services and openly and collectively say so.

15. There is no discretion in this decision. There is no analysis to set priority status for the request. Grand Rapids Police Officers are simply refusing to assist any and all Black and Hip Hop events to protect otherwise legal activity from illegal behavior.

16. "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate [*12] training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Boddy v. City of Memphis Tenn.*, No. 22-5259, 2022 U.S. App. LEXIS 29421, 2022 WL 12258977, at *3 (6th Cir. Oct. 21, 2022) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). *Smith v. Bauer*, 2023 U.S. Dist. LEXIS 57265, *11-12.

17. It is obvious there is the existence of an inadequate training and supervision situation that exist since Lt. Dean spoke for Grand Rapids Police Officers when he openly indicated under no circumstances would GRPO support Black or Hip Hop events

18. It is obvious since City Manager was given notice of this sentiment expressed by Lt Dean and nothing changed in the behavior of GRPO toward Plaintiffs.

19. In addition, it is clear that the existence of a custom of tolerance or acquiescence of federal rights violations exist here as well. City Commissioners, the City Manager, and other city staff, including GRPD rank and file, are aware of this police officer culture and racially motivated conspiracy to deny assistance to Black and Hip Hop events for no other reason except that they are Black and the Black community won't give a pass or praise the actions of the GRPD's actions against Patrick Lyoya.

    *United States Supreme Court analysis of the legislative history of the Civil Rights Act of 1871, 17 Stat. 13, compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom 42 U.S.C.S. § 1983 (§ 1983) applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels.*

    Monell v. Dep't of Soc. Servs., 436 U.S. 658, 660

20. Keeping in mind White discourse has been as intense or even more intense in some situations regarding community reaction to the killing of Patrick Lyoya. White members of the community have led efforts to defund the police. And yet there is a collective effort by GRPO to deny only Black and Hip Hop events their discretionary services.

21. GRPO are not denying White events, not German events, not Dutch events, not male events, not female events, not Italian events, not French events, not Hispanic events, not disabled events, not LGBTQ events, not Conservative events, not liberal events, not old people events, not young people events, not rich people events, not poor people events. Only Black and Hip Hop events. This is according to Lt. Dean.

22. Though the GRPD has notice (Lt Dean, a GRPD employee, informed Plaintiffs of this custom), the City Manager has notice, the Chief has notice, the City Commissioners have notice.

23. And while they all have notice Lt. Dean was so sure that City leadership would stand mute to this federal rights violation, even though it is clear that the existence of a custom of tolerance or acquiescence of federal rights violations exist here, Lt Dean said out loud what Plaintiffs suspected but until now could not prove.

24. Lt. Dean openly made the claim of, "no police support will come to you" directly to a YOUNG BLACK MALE in the presence of a Grand Rapids City employee. He didn't whisper this statement. He stated it boldly and unabated.

25. Alvin (Ambiance co-Owner and investor of Ambiance GR) reported this back to City Manager Mark Washington. Thus far Plaintiffs are unaware of any action, if any, were ever taken.

26. This gross negligence in supervision should shock the conscience of the Court. This unspoken racist custom should shock the conscience of the Court. The fact that a Lieutenant of the GRPD would make such a statement so openly and cavalier should shock the conscience of the Court.

27. I can honestly say it has shocked the conscience of the Plaintiffs, Black people

28. Much like Marchese v. Lucas, "The prisoner was twice beaten severely while in the custody and complete control of sheriff's officers. Under these circumstances, the court found that § 1983 created an action for damages. Further, the court found that such liability extended to the sheriff in his official capacity because he failed to train and discipline his force and because he ratified the illegal acts through his failure to investigate, determine and punish the individual officers concerned. Moreover, the court found that the county could be held jointly liable with the sheriff as the unit of local government that financed the sheriff's department and because the sheriff made police policy for the county. *Marchese v. Lucas, 758 F.2d 181, 181*"

29. It should be noted a person can be beaten by more than just by fist. Sure, Blacks have taken more than their fair share of beatings at the fist of police officers, racist, and other Blacks. Black Americans have also been beaten by words of hate, discrimination, double standards, rejection, denial, ignorance, racial conspiracies, segregation, lack of access, lack of resources, lack of quality of education, redlining, judicial bias, race based convictions, racially motivated killings, racial profiling, political pimping, and etc.

30. Plaintiffs have been beaten by the GRPD when GRPOs denied equal protection by the Grand Rapids Police Department. Plaintiffs have been beaten by the City Manager (who himself is Black) and the City Commissioners when they ignored Plaintiffs' pleas for help in dealing with a custom of hate and racism that exist in the GRPD.

31. Under these circumstances, as in *Marchese v. Lucas* where the court found that § 1983 created an action for damages, Plaintiffs believe those circumstances exist here. Plaintiffs believe the Court should find that the City be held jointly liable with the Chief as the unit of local government that financed the Grand Rapids Police Department and

because the Chief made police policy for the City. Further, the court should find that such liability extends to the Chief in his official capacity because he failed to train and discipline his force and because he ratified the illegal acts through his failure to investigate, determine and punish the individual officers concerned. Moreover, the court should find that the City should be held jointly liable with the Chief as the unit of local government that financed the Grand Rapids Police Department under the Michigan Public Act 2 ("Uniform Budgeting and Accounting Act") and because the Chief made police policy for the City.

32. *Equal Protection.* No state shall "deny to any person within its jurisdiction the equal protection of the laws." US Const amend XIV, §1. To prove an equal protection claim when neither a fundamental right nor suspect class is at issue, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, the plaintiff must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 US 562, 564 (2000). When a law adversely affects a "suspect class" such as race, alienage, or national origin or invades a "fundamental right" such as speech or religious freedom, "strict scrutiny" generally governs. *City of Cleburne v Cleburne Living Ctr, Inc*, 473 US 432, 440 (1985) The *Equal Protection* clause of the Fourteenth Amendment prohibits local governments from discriminating on the basis of race. The Supreme Court of the United States has recently held that a city policy violating a constitutional right is cognizable under 42 U.S.C.S. § 1983, even if that policy is but a single decision by municipal policymakers. Brookins v. Michigan, 1987 U.S. Dist. LEXIS 15678, *1

The Equal Protection clause of the Fourteenth Amendment prohibits local governments from **discriminating** on the basis of **race**. The Supreme Court has recently held that a city policy violating a constitutional right is cognizable under § 1983, even if that policy is but a single decision by municipal policymakers. *Pembaur v. **City of Cincinnati**,* U.S. , 106 S.Ct. 1292 (1986). The **complaint** alleges that the **City** of Detroit has a policy of not funding **minority business** enterprises because of their minority status. Brookins v. Michigan, 1987 U.S. Dist. LEXIS 15678, *6

33. Plaintiffs believe the City and the Chief adopted the discriminatory policy by the Grand Rapids Police Department by allowing GRPOs to reject assistance to a Black owned business. Since the City Manager, City Commissioners, and the Chief knew of the action of GRPO, to deny law enforcement assistance to Black owned Ambiance GR, the racially biased custom became ratified as an accepted policy of the City of Grand Rapids. Because corrective action was never taken by the City of Grand Rapids nor the Chief this policy is clearly an Equal Protection rights violation. Lt. Dean stated this policy applied only to Black and Hip Hop events.

34. Ambiance GR's Black ownership, prior to opening, met with Grand Rapids Police Department and City officials and administration (EXHIBIT 1). Purpose was to address any possible concerns either party may have and to develop a plan of cooperation in order that Ambiance GR would be a positive attribute to the downtown business district.

35. After Ambiance GR opened and alleged concerns surfaced, Ambiance GR's Black ownership sought advice, cooperation, and assistance from Grand Rapids city officials and Grand Rapids Police Officers. Several City elected officials, administrators, employees, and Grand Rapids Police Department Officers (GRPDO) were consulted,

informed, and solicited for assistance in dealing with public and private concerns. (EXHIBITS 2-5)

36. Ambiance GR requested police presence during closing hours. It was not provided. Ambiance GR requested increased police presence. It was not provided.

37. The City has provided, and still do, provide such accommodation services of steady and increased patrol and police traffic control activity to white owned businesses over the past 30 years, including the Van Andel Arena and Devos Place Center during the let out periods of business hours.

38. This included crowd and traffic control. GRPO still provide these services today on a regular basis.

39. (City Reps) had specific detailed knowledge of the dangers/hazards re: crowd congregating problems and intentionally and or negligently failed to address it: Ambiance GR ownership met with the city to discuss the following issues;

>   (a) They were told of the risk and threat of such a lawless hazard to the business, of people congregating, being a problem for prior minority business establishments and the big preventative steps the Ambiance GR owners took in working with the Police Dept. Officials to work out an effective plan with the Police 2-3 years prior to opening. And the promise of support and help from the Police to address such hazards should they occur.
>
>   (b). Once opened the congregating disruptive conduct by hundreds of non-patrons, outside the door of Ambiance GR property on public streets-sidewalks, were made known to City Officials and observed by them.

(c) The blatant disregard of 911 phone calls for assistance on traffic control, made by Ambiance GR employees, representatives, and other neighboring establishments observing and notifying Police of violations of all kind of public traffic laws - some of the conduct specifically observed by City Officials including the shooting into one of the windows at the business, was intentional and grossly negligent.

(d) City Officials directly acknowledging the violation problems in meetings, making promises to deliver service, and then later on stating they cannot control the loiterers and traffic violators (EXHIBIT 2-6).

(e) Police Officials, during the crisis, asserting their exclusive jurisdiction over public streets (and the restricted legal authority of the Ambiance GR Private Security) failed to provide or take care of the service they denied Ambiance GR.

40. Before, during, and after Ambiance GR's presence in downtown Grand Rapids, when similarly positioned white owned downtown businesses requested the same increase patrol services, that Ambiance GR was seeking, the City found a way to provide that increased level of police protection and services that it had denied Ambiance GR.

41. More recent, when the White area downtown owned businesses requested the same increased patrol services that Ambiance GR was seeking, the City found a way to provide that increased level of police protection and services that it had denied Ambiance GR. (EXHIBIT 6)

42. When White owned businesses complained about crimes related to the pedestrian Blue Bridge in downtown Grand Rapids, over the Grand River, the city of Grand Rapids took

action, that included closing the Bridge over night. [Closing Blue Bridge weekend nights a 'proactive' step to promote downtown safety - mlive.com](#) Published June 06, 2023 4:28 PM

43. Ambiance GR hired 2 private security services (Phoenix Security hired December 31, 2021. Top Breed Security Service hired approximately March 1, 2022). Even though Grand Rapids Police restricted the private security company's area of security to inside Ambiance GR, the city of Grand Rapids later contracted with Phoenix Security for their own purposes.

44. When the security companies, contracted with Ambiance GR, were instructed by Grand Rapids Police officers that the Security Company staff weren't allowed to provide any services outside the walls of Ambiance GR, Grand Rapids Police made no effort to police the outside area of Ambiance GR. Even though Ambiance GR requested that GRPD come during close of business hours as a deterrent to possible violence.

45. When police responded to a criminal complaint(s), even though the issue was not associated with Ambiance GR, the police associated the criminal complaint with Ambiance GR. Even though Ambiance GR had nothing to do with the criminal complaint

46. Damages incurred were loss of investment for renovations ($approximately $1,000.000), rent while renovations occurred, business reputation, and future income ($2,000.000.00)

**Count II-Gross Negligence**

47. Plaintiff incorporates by reference paragraphs 1-45

48. The act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). To be "the