proximate cause" of an injury, MCL 691.1407(2), the defendant's gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson v City of Detroit*, 462 Mich 439, 462, 613 NW2d 307 (2000); *see also Ray v Swager*, 501 Mich 52, 65, 903 NW2d 366, *on remand,* 321 Mich App 755, 909 NW2d 917 (2017).

Michigan Causes of Action Formbook ch 10 (Kaitlin A. Brown et al eds, ICLE 2d ed 2020), at https://www.icle.org/modules/books/chapter.aspx?lib=litigation&book=2020555610&chapter=11 (last updated 12/01/2023).

49. Basic elements include the following:
    a. The defendant owed a legal duty to the plaintiff.
    b. The defendant breached or violated that legal duty.
    c. The defendant's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury might result.
    d. The plaintiff suffered damages.
    e. The defendant's breach was *the* proximate cause of the plaintiff's damages.

50. Plaintiff constitutionally protected rights that Defendants violated include the following:
    a. the right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment

51. GRPOs, acting under color of state law, selectively increased their patrol and traffic control based on race, in direct conflict with Plaintiffs' Constitutional rights.
52. GRPOs violated their affirmative duties, intentionally withheld their duty to intervene, and then falsely accused Ambiance GR as the cause of the complaint of criminal actions when the criminal event was not even connected to Ambiance GR.

53. GRPOs and the Chief, acting under color of state law and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights. Further, their actions showed deliberate indifference to Plaintiff's concerns, safety, and the safety of their customers. Plaintiffs' serious safety concerns, which were similar to those of White businesses similarly situated, were repeatedly ignored. Denial of Plaintiff's 14th Amendment right to equal protection and equal rights was an intentional deprivation of Plaintiff's constitutionally protected rights. Defendant Officers openly stated that they would not police Black/Hip Hop events.

54. Defendant Officers, City administrators, and employees willfully and intentionally coordinated willful, wanton, and deliberate conduct that contributed to Plaintiffs' developing a negative reputation created in the downtown business community.

    *Local governing bodies can be sued directly under 42 U.S.C.S. § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, every § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels.* Marchese v. Lucas, 758 F.2d 181, 181

55. As a direct and proximate result of GRPOs and City Officials conduct, Plaintiff suffered emotional injury, loss of business, loss of revenue, loss of reputation, and other constitutionally protected rights described above.

56. GRPOs and the Chief, acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto custom policy of deliberate indifference of a discriminatory nature to Black business owners, such as Plaintiffs.

57. As a direct and proximate result of these policies, practices, and customs, Plaintiffs was deprived of Plaintiffs' constitutionally protected rights described above.

58. **Police Officers Role;**

- Grand Rapids Police Officers have discriminated against Ambiance GR, its customers, and owners because they are Black. April 19th, 2021 (EXHIBIT 3) Jonathan emailed Lt Dean to request Special Events Permit for public safety Alvin Hills IV met with Lt Dean and Evette Pittman 4/19/22 @ 1pm virtually. Alvin met with Lt. Patrick Dean and City of GR Special Events Manager Evette Pittman virtually to discuss the process for Ambiance to apply for special events security as instructed by City Manager Mark Washington. Lt. Dean expressed that he doesn't have staffing available to cover this request this week or the following weeks to come. He instructed that if he posted this overtime opportunity no officer would accept due to his officers not having the appetite to police "these types of events" alluding to African American/Hip Hop based events in the wake of the recent killing of Patrick Lyoya. Alvin requested for Lt. Dean to allow Ambiance to request security services and see if any offers were accepted. Evette Pittman added that GRPD has more than enough officers to secure the DeVos and Van Andel through the Convention Arena Authority and asked could the department approach it in a similar manner. Lt Dean was adamant that none of his officers would accept, so there's no reason for us to submit a formal special events security request. Due to the climate created after the Patrick Lyoya shooting, Lt. Dean expressed that any African American/Hip Hop led event happening GRPD would not be interested in securing those spaces. He expressed that the current perception by the public and anticipated African American community retaliation for the killing of Patrick Lyoya would not be a space his officers would be interested in securing. Lt. Dean discouraged Ambiance GR from submitting a formal request. Alvin reported this back to City Manager Mark Washington. Nothing happened. This was a violation of Plaintiffs' right to equal protection under the law. Lt. Dean

expressed that any African American/Hip Hop led event happening in the City of Grand Rapids, GRPD would not be interested in securing those spaces. Lt. Dean included his entire police force in that statement. Though White citizens were demanding public officials defund police departments and demonstrating against law enforcement, Lt Dean stated only African American/Hip Hop events would be resisted. Mark Washington had notice of this conversation and yet nothing happened. Mark took no corrective action against the Grand Rapids Police Department.

- Affidavits have been attached as EXHIBIT A and Several additional copious notes have been attached as EXHIBITS 1-8 as a part of Ambiance Engagement Record with Grand Rapids Police Department, Mark Washington, other city staff, and Grand Rapids City Commissioners as Engagement Record. Associated emails and records of meeting are a part of these attachments/Exhibits. EXHIBIT B is the index of designated unknowns

59. Lt Dean's statement is clear proof the GRPD has decided, as a police department, that they would and have been denying equal public services to African American owned businesses compared to White owned businesses, based on the belief that African American people didn't support them after the death of Patrick Lyoya. The Grand Rapids Police Department has admitted that it is okay for dispatch to hold off relaying a request for help from African American owned businesses unless there are guns present included in the complaint. Knowing, once a gun is made public, that the situation has escalated to most likely a deadly level. If there is a large fight don't call us. If there is a large fight in downtown Grand Rapids on or near Pearl Street it is most likely because of that African American owned business, Ambiance GR.

60. Black citizens aren't required to support police officers in order to receive lawfully required equal services/protection as required by the **Equal Protection Clause of the 14th Amendment**

61. June 5, 2022, (EXHIBIT 5) Jamiel was making his management rounds checking in with staff and our security team on the inside of Ambiance GR. The night was busy and Ambiance GR patrons were having a great time. Jamiel went to check in with the entry door security staff when he noticed a group of people fighting in Ellis parking lot. He requested that Ambiance GR security break up the fight.

62. Eric Goodson of Phoenix Security expressed he's been informed by police and City officials to not break up any altercations in the public right of way or his security company could be at risk of losing bonding. Also, police and City officials stated that our security couldn't publicly carry guns to secure the public sidewalk and right of way.

63. The public right of way is GRPD's responsibility and they did not want private entities securing their jurisdiction. (Ambiance GR ownership was informed of this at the public safety meeting on 4/21/22 by GRPD Captain Vincent Riley).

64. Jamiel (Ambiance GR owner) told the security team he wanted them to break the fight up before it became more serious and violent. Once our security staff declined to break-up the fight, Jamiel told Alvin to call the police.

65. While Alvin (Ambiance GR owner) was on the phone with the police Jamiel saw someone that was involved in the fight run to a truck that was parked illegally outside of Ambiance GR and grab two guns.

66. Jamiel told Alvin to tell the police that someone had guns and was shooting. Jamiel told our security to secure Ambiance GR and not to let anyone in the door. Jamiel told Ambiance GR staff to look after our patrons on the inside of Ambiance GR.

67. Alvin called the police 5 times beginning around 11 PM on June 4, 2022, prior to the shooting, asking them to come deescalate the parties involved in an altercation. The parties were fighting on the sidewalk which is a public right of way in front of the Ellis Parking lot near Freshii.

68. Alvin wanted the GRPD to respond to prevent any harmful actions from occurring. GRPD continuously informed Ambiance GR and their security detail that GRPD is responsible for protecting the public right of way and that they didn't want private security policing these spaces.

69. The dispatcher asked if we saw a weapon then they would come. The fight continued and Alvin called 911 again to inform dispatchers that someone had a gun. The dispatcher then mentioned that it's not illegal for people to own guns.

70. While on the call with the dispatcher shots rang out. Armonie Lee Acklin, age 25, was murdered as the victim that night. The police then responded with a robust police presence.

71. This was the outcome the Ambiance GR team feared and tried to prevent years prior to and during continuous public safety requests to the City of Grand Rapids and GRPD. The team knew that all they'd done to survive COVID-19 and open this business was gone down the drain.

72. Grand Rapids Police Call Management Manual states in section D(2) Decision Points:

> a. If the call taker has reason to believe during the initial contact, that an immediate patrol response is necessary, they shall enter the CAD incident immediately. Directly after, they shall complete the sequence of questions and record the information in the CAD incident.
>
> b. Call takers receiving calls of crimes in progress shall attempt to keep callers on the line adding comments to the CAD incident if the caller can safely provide pertinent information or until officers secure the scene.

73. Grand Rapids Police Call Management Manual's CALL PRIORITIZATION states in Section F(1):

> The call taker will assign a dispatch priority to the call for service based on current CAD incident types. If necessary, the call taker shall assign a higher or lower priority than the default value provided by CAD (Computer Aided Dispatch) based on answers obtained during call intake.

Section F(2):

> A patrol unit shall be dispatched immediately, upon unit availability. If a patrol unit cannot be dispatched within sixty (60) minutes, then the watch commander shall be notified. Once notified, the watch commander shall take reasonable steps to alleviate the call backlog which could include cancelation.

74. Plaintiff stated already that Alvin called 5 times around 11 PM. Alvin informed the police department of the presence of guns and a large fight currently occurring. Serious criminal activity in progress with lethal weapons present. Obviously this incident was

not given the highest priority since the calls began at around June 4, 2022 at 11 PM and shooting occurred June 5, 2022 at approximately 12:15 AM.

75. That evening of June 4, 2022 and the early morning of June 5, 2022 the words of Lt Dean could not have been more real as GRPD Officers intentionally ignored Ambiance's calls for help until someone was shot dead.

**City Leadership Role;**

76. Plaintiff incorporates by reference paragraphs 1-74

77. "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To state a claim against a municipality, "a plaintiff must also allege that the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." Blackwell v. Allen, No. 22-1300, 2022 U.S. App. LEXIS 35494, 2022 WL 17832191, at *9 (6th Cir. Dec. 21, 2022) (citing Powers v. Hamilton Cnty. Pub. Def. Comm'n, 501 F.3d 592, 606-07 (6th Cir. 2007) (quoting Monell, 436 U.S. at 694)). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate [*12] training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Boddy v. City of Memphis Tenn., No. 22-5259, 2022 U.S. App. LEXIS 29421, 2022 WL 12258977, at *3 (6th Cir. Oct. 21, 2022) (quoting Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)). *Smith v. Bauer, 2023 U.S. Dist. LEXIS 57265, *11-12*

78. Grand Rapids Police – Manual of Procedures

    b. General Responsibilities

        3.1   All employees shall comply with all Rules, Orders, and Procedures of the Grand Rapids Police Department.

        3.2   All sworn employees shall take, and abide by, the Grand Rapids Police Department Oath of Office.

        3.3   Employees will observe and obey all Federal, State, and local laws; General, Special, and Personnel Orders of the Department and of the Unit to which they are assigned; other lawful orders of their supervisors; and all other administrative regulations enacted pursuant to Federal, State, or local laws.

        3.4   Upon observing or otherwise becoming aware of a violation of the Rules, Orders or Procedures, employees shall report the violation to their Supervisor or the Internal Affairs Unit.

79. Local governing bodies can be sued directly under 42 U.S.C.S. § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, every § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels. *Marchese v. Lucas, 758 F.2d 181, 181*

80. Grand Rapids City leadership sought to convince Plaintiff's owners to shift their focus from the police and, instead, show support for the police and their racist policies using their political cache to influence members of the City Commission's policies on policing. City Leadership, instead of addressing the failed policy that allows Police Officers to openly say they are not going to police Black/Hip Hop events, also sought to influence the Plaintiffs to not expose the discrimination and negligence experienced with GRPD to the media and public at large.

81. In exchange for not exposing the discrimination and filing an immediate law suit, the city would negotiate to financially deleverage Ambiance GR.

82. And after the GRPD advised plan failed Ambiance GR, GRPD refused suggestions from the Ambiance GR owners while the City Leadership and the Chief sat on their hands until a group of White owners complained in a collective letter (EXHIBIT 7) and Ambiance GR closed permanently
    - November 30th, 2022
    - Public Safety Update City Manager Mark Washington
    - Near Term Redeployment of some officers downtown to increase police visibility
    - Downtown Grand Rapids Incorporated Bill Kurt sent out correspondence
    - Non-Black Owned businesses called for this and near term redeployment was implemented. Ambiance called for this and was not granted this commitment of support.

83. Damages incurred were loss of investment for renovations ($approximately $1,000.000), rent while renovations occurred, business reputation, and future income ($2,000.000.00).

84. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate [*12] training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

85. Plaintiffs clearly can prove the existence of a custom of tolerance or acquiescence of federal rights violations by showing that the Chief, the City of Grand Rapids, and the Commissioners were aware of the collective custom the GRPD's officers to deny, reject, and refuse all request from a Black owned business because the Black community refused to endorse the actions of a GRPO's actions in the alleged murder of Patrick Lyoya.

86. Plaintiffs clearly can prove the existence of a policy of inadequate [*12] training or supervision since the City of Grand Rapids, Commissioners, and the Chief were all aware of this custom by the GRPOs to reject all request to assist Ambiance GR, a Black owned downtown business. And because no one was retrained or disciplined by the Chief and the Chief was not disciplined by the City Manager and the City Manager was not disciplined by the City Commission, all levels of supervision demonstrated inadequate training and supervision. GRPO demonstrated inadequate training and supervision as well.

87. Lt Dean openly boasted of the GRPD custom policy to a Black Male Business owner in the presence of a City of Grand Rapids employee without so much as a blink of the eye of discomfort while describing the racially based custom.

88. Finally, Plaintiffs have already proven that an official with final decision making authority ratified illegal actions

89. Plaintiffs already outlined every level of authority with the authority to correct this custom was on notice of this custom and no actions by any level authority was taken. Instead, the City Manager urged Plaintiffs to attack the City Commission for the racist custom. Even though the City Manager had the authority to take action against the Chief if the Chief didn't act properly.

90. There is no record, that Plaintiffs are aware of, that even the legal division of the City of Grand Rapids was even consulted regarding the racist custom ratified as policy in the GRPD or that the civil rights violations against the Plaintiffs were even discussed with the city's legal department prior to filing this Complaint.

**After Closing**

- Senita conversation where she instructed she would meet with City Attorney Anita Hitchcock and for Plaintiffs to hold off on filing a claim against the City of Grand Rapids
- 11/9/22 Jamiel called Commissioner Ysasi to discuss closing
- December 2022 Jamiel and Jonathan met with Commissioner Ysasi and City Manager Mark Washington to discuss accountability

91. The decision of City Manager Mark Washington and the City of Grand Rapids to redeploy police forces to downtown Grand Rapids in partnership with the Kent County Sheriff's Office and implement other safety measures for downtown Grand Rapids stated in the Safety Update email from the City Manager on November 30, 2022, stands as a stark testament to the deeply troubling disparities in their response to safety concerns.

The profound disappointment stems from the stark contrast between the action taken after predominately white-owned businesses and stakeholders raised similar issues and the prolonged silence in response to Ambiance GR's consistent and heartfelt pleas throughout the entirety of 2022.

92. Ambiance GR tirelessly articulated and documented valid concerns, expressing the urgent need for increased safety measures in downtown Grand Rapids. The Mayor later agreed with Ambiance GR's ownership (EXHIBIT 5). The city's belated reaction only underscores a disturbing pattern of neglect and unequal treatment. The closure of Ambiance GR on November 9, 2022, now seems like a poignant symbol of a Black business left to fend for itself, its pleas for increased safety measures and support coming up short.

93. It is disheartening to witness a municipality prioritizing the safety of certain businesses and stakeholders over others based on ownership racial demographics. A November 15th story from Fox 17 News reported on the growing concerns over violence in Downtown Grand Rapids. In the Fox 17 News story they spoke with over a dozen businesses that voiced the need for more police and safety measures. This is one of many news reports centered around public safety concerns from 2022. 15 days after this news report City Manager Washington released the Safety Update letter stating how the City of Grand Rapids were immediately addressing the violence and safety issues. This selective responsiveness not only perpetuates systemic inequities but sends a chilling message about whose concerns are deemed worthy of immediate attention and decisive action.

94. The emotional toll on the Ambiance GR staff and owners is immeasurable, having endured a year of grappling with safety issues, only to witness the city's decisive response following the echoes of privileged voices. The palpable sense of betrayal reverberates through the community, which now stands abandoned by those entrusted with ensuring its safety.

95. The City of Grand Rapids must confront the glaring disparities in its approach to community safety. The events of November 30, 2022, serve as a poignant reminder of the need for systemic change, a call for a fair and unbiased commitment to the well-being of all businesses, irrespective of the color of their skin or the ownership of their businesses.

96. It also destroys the discretionary authority of GRPO as it relates to providing additional assistance to Ambiance due to their safety concerns.

97. The City made a decision to modify the redistribution of GRPO human power and presence in downtown Grand Rapids, regardless of what the decision or custom was of GRPOs, and it happened. Which demonstrates that the Chief, the City Manager, and the Commissioner had the authority to force change when White business owners demanded change. Which was after Ambiance GR closed their doors permanently.

98. City Officials claim what Ambiance GR was asking for couldn't be done. Even though, immediately after Ambiance GR closed, the City Manager announced a plan to increase police presence in the downtown corridor.

99. In addition, the City of Grand Rapids hired the same private security company that was contracted with Ambiance GR. The same security company that was instructed not secure the curtilage surrounding Ambiance GR.

100. The City of Grand Rapids modified their policy and increased police presence for the remaining White owned businesses, something the City and the Grand Rapids Police Department said it could not be done for Black or Hip Hop events.

101. GRPD claimed they were worried about being in the community because of the Patrick Lyoya killing. But GRPD continued their undercover arrest, reasonable suspicion traffic stops, undercover surveillance operations, arresting Black members of the community, etc.

102. GRPD had no concerns of continuing all of the confrontational engagements in the Black neighborhoods, with no regard for the reaction of the community over the killing of Patrick Lyoya.

103. GRPD was never going to do anything to improve relations in the Black community because they have now confessed their racial animus toward the Black community.

104. May 3, 2022, (EXHIBIT 4) Lacy Jones met with Commissioner Lenear at Ambiance Kitchen & Lounge to discuss the ongoing situations that Ambiance had been experiencing in downtown Grand Rapids.

105. Mr. Jones shared with Commissioner Lenear how diverse Ambiance was and that Ambiance GR had been very disruptive (in a good way) to the downtown business district in regards to night time entertainment options.

106. Ambiance GR owners informed Commissioner Senita Lenear that nearby white owned businesses did not like Ambiance GR being downtown Grand Rapids, especially Flannigan's, Ambiance GR believed. Ambiance GR informed Commissioner Lenear that Ambiance had not gotten the support from the police that Ambiance needed in order to

thrive and have longevity as a Black owned Kitchen & Lounge in downtown Grand Rapids.

107. Ambiance GR informed Commissioner Lenear that Ambiance GR (or the area near Ambiance) had a loitering problem with people hanging outside of the business.

108. Owners shared with Commissioner Lenear that the people who could not get into Ambiance would hang out on the sidewalks and in the parking lot next to the business.

109. Ambiance told Commissioner Lenear that the Mayor and the City Manager were supposed to help the owners of Ambiance GR with this problem but the help never happened.

110. Ambiance GR informed Commissioner Lenear that if a situation happened outside that warranted a police presence Ambiance GR staff had to call 911, but officers would not come & Ambiance owners were told, by the police dispatcher, that they (police) would not send an officer unless a gun was involved.

111. Ambiance GR explained that Ambiance had been meeting with the police and city officials since 2018 trying to formulate a partnership with them so that Ambiance would be properly protected as a Black owned business in downtown Grand Rapids.

112. Ambiance GR explained to Commissioner Lenear that Ambiance took a proactive approach to ensuring a strong partnership with the GRPD but were unsuccessful.

113. Ambiance GR talked to Commissioner Lenear about how the Mayor and the City Manager were supposed to help us with securing police presence and a strong relationship with the police but even when they tried to solidify the relationship between Ambiance and the GRPD the City Manager and the Mayor were met with strong resistance and to "no, we're not doing that" by the police.

114. Commissioner Lenear responded by saying "I don't know why they're not doing that. They do it for every white owned bar in downtown Grand Rapids, what makes your bar any different, they should give Ambiance the same support that they give to the BOB and all the other white owned bars. We all know how they stay parked outside of the BOB and other white owned bars, they should do the same for you".

115. Commissioner Lenear then stated "now you know I'm a firm believer in equality". I told Commissioner Lenear that I wasn't surprised by her response because that is exactly what she said to the former CEO of Downtown GR Inc. when she arranged a meeting with the three of us as we discussed Ambiance GR opening a venue in downtown Grand Rapids and the CEO agreed with Commissioner Lenear. Also, Commissioner Lenear said, "you should never have to tell a police dispatcher that there is a gun involved in a situation in order to get assistance from the police". Ambiance GR informed Commissioner Lenear that the City Manager tried to garner a relationship with Ambiance and the Kent County Sheriff's Department to give us assistance patrolling the outside of the venue as a result of the Grand Rapids Police Department Refusing the City Manager's directive to Patrol the outside of Ambiance, but that relationship was later turned down as well. Ambiance told Commissioner Lenear that we even applied for a special permit for events where we would pay for GRPOs to be present at our events and patrol the outside of our venue like they do at the Van Andel Arena & DeVos Place but that was turned down as well.

116. Ambiance told Commissioner Lenear how Ambiance Owners were visited by a Lieutenant from the GRPD at Ambiance, prior to opening, one day and how the Lieutenant's conversation with a GRPO was overheard as the Lieutenant stated, "they

won't make it through the summer". The Lieutenant said that prior to even talking with us.

117. Ambiance let Commissioner Lenear know that the Lieutenant told us that the GRPD does not want our License & Bonded security team outside carrying guns because they could get hurt by the Grand Rapids Police Department mistaking them for criminals if they were outside with weapons when the GRPD responds to a disturbance.

118. Ambiance told Commissioner Lenear that we told the Lieutenant that we have a right to protect our business. and that we're not doing anything illegal but the Lieutenant said no, it's not illegal but we don't want that downtown. He said that he'll have an officer do some outside rounds from time to time.

119. And not even 2 weeks later four people were shot in the Ellis Parking Lot by a man who was never inside of Ambiance and Ambiance staff called the police numerous times about a potential altercation happening in the Ellis parking lot but were told each time that if a gun is not involved they are not coming.

120. Ambiance informed Commissioner Lenear that, the GRPO that was supposed to do an outside round, arrived after four people were shot and one died. The GRPO chuckled, "man... and I was just about to head this way to do a round".

121. Ambiance GR told Commissioner Lenear that the Mayor, City Manager and City Commissioners Joe Jones and Milinda Ysasi were all aware of what we were dealing with outside of our business and their inability to get Ambiance support from the GRPD was a travesty and if Ambiance GR were a white owned establishment the lack of support wouldn't have happened.

122.   Ambiance also told Commissioner Lenear, and to make things worse, the City Of Grand Rapids turned around and hired our licensed and bonded security team to help protect downtown Grand Rapids... but they weren't allowed to help protect our business!? Commissioner Lenear said that makes no sense at all.

PLAINTIFFS REQUEST that this court enter judgment against Defendants in an amount consistent with the Punitive Damages (Defendants' actions were either intentional or committed with reckless or callous disregard for the plaintiff's rights and Defendants acted with malice as they intended for Ambiance GR to fail) and Compensatory Damages (supplies, lost wages [i.e., back pay and lost future earnings], and emotional pain and suffering) related to and sustained in Count I and Count II consistent with a 42 USC Section 1983 claim.

**Therefore,** Plaintiff demand a judgment of more than $25,000.00 against the Defendants plus interest, cost, and reasonable attorney fees.

Sincerely,

Date February 29, 2024

/s/Tyrone Bynum
Tyrone Bynum (P82427)

### PLAINTIFF'S DEMAND FOR A JURY TRIAL

Under MCR 2.508, the Plaintiff request that all of the counts be tried by a Jury.

Respectfully Submitted

Counsel For Plaintiff

By:   /s/ Tyrone Bynum_____
Tyrone Bynum (P82427)
Law Offices of Tyrone Bynum PLLC
7125 Headley Street
Suite #433
Ada, MI 49301
(616) 608-7409
Tyrone@LawOfficesofTyroneBynumPLLC.com

## PROOF OF SERVICE

I hereby certify that I electronically served the above FIRST AMENDED COMPLAINT pursuant to MCR 2.105, regarding the above matter on February 29, 2024 to the following:

> CITY OF GRAND RAPIDS
> GRAND RAPIDS CHIEF OF POLICE
> 1 MONROE CENTER NW
> GRAND RAPIDS, MI 49503

/s/ Tyrone Bynum
Tyrone Bynum