UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

---

AMBIANCE GR,

     Plaintiff,

v                                    Civil Action No. 1:23-cv-1335

                                        Hon. Jane M. Beckering

CITY OF GRAND RAPIDS,

     Defendant.

---

| | |
|---|---|
| Tyrone Bynum (P82427) | Elizabeth J. Fossel (P41430) |
| *Attorney for Plaintiff* | Sarah J. Hartman (P71458) |
| Law Offices of Tyrone Bynum PLLC | Megan E. Luptowski (P84826) |
| 7125 Hearley Street, Suite 433 | *Attorneys for City of Grand Rapids* |
| Ada, MI 49301 | City of Grand Rapids Law Department |
| Ph: (616) 608-7409 | 300 Monroe Ave. NW, Ste. 620 |
| tyrone@lawofficesoftyronebynumpllc.com | Grand Rapids, MI 49503 |
| | Ph: (616) 456-1318 |
| | efossel@grand-rapids.mi.us |
| | shartman@grand-rapids.mi.us |
| | mluptowski@grand-rapids.mi.us |

---

**<u>BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) BY THE CITY OF GRAND RAPIDS IN LIEU OF AN ANSWER TO THE SECOND AMENDED COMPLAINT</u>**

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

## **TABLE OF CONTENTS**

I.      BACKGROUND ............................................................................................................. 1

II.     LAW AND ARGUMENT .......................................................................................... 2

   a.   Standard of Review ................................................................................................ 2

   b.   The City of Grand Rapids is entitled to dismissal. ............................................. 4

   c.   Plaintiff has failed to state a viable cause of action for "Gross Negligence." .................. 13

III.    CONCLUSION .......................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)......................................................3, 5

*Bd. Of County Com'rs of Bryan County, Okl. v. Brown*,
520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed.2d 626 (1997)....................................................4, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................2, 3

*Bletz v. Gribble*,
641 F.3d 743 (6th Cir. 2011) ..............................................................................................13, 14

*Brent v. Wayne Cnty. Dept. of Hum. Servs.*,
901 F.3d 656 (6th Cir. 2018) ...................................................................................................13

*Brown v. City of Wyoming*,
658 F. Supp 546 (W.D. Mich. 2023) .................................................................................11, 12

*Burgess v. Fischer*,
735 F.3d. 462 (6th Cir. 2013) ....................................................................................................5

*Connick v. Thompson*,
563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)..............................................................4

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) ...............................................................................................3, 11

*D'Ambrosio v. Marino*,
747 F.3d 378 (6th Cir. 2014) .....................................................................................................9

*Floyd v. City of Detroit*,
518 F.3d 398 (6th Cir. 2008) ...................................................................................................13

*Gregory v. City of Louisville*,
444 F.3d 725 (6th Cir. 2006) .....................................................................................................8

*Hayes v. Jefferson County, Ky.*,
668 F.2d 869 (6th Cir. 1983) ..................................................................................................8, 9

*Hunter v. Sec'y of U.S. Army*,
565 F.3d 986 (6th Cir. 2009) .....................................................................................................2

*Jackson v. City of Cleveland*,
    925 F.3d 793 (6th Cir. 2019) ...............................................................................8, 9

*Jackson v. Lubelan*,
    657 Fed. Appx. 497 (6th Cir. 2016)...........................................................................13

*Leach v. Shelby Cty., Sheriff*,
    891 F.2d 1241 (6th Cir. 1989) ....................................................................................9

*Lyoya v. Schurr*,
    Case No. 1:22-cv-1160 (W.D. Mich. 2023).............................................................8, 9

*Monell. Robertson v. Lucas*,
    753 F.3d 606 (6th Cir. 2014) ....................................................................................13

*Monell v. Dept. of Soc. Serv. of New York*,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)....................................... *passim*

*Rondigo, L.L.C. v. Twp. Of Richmond*,
    641 F. 3d 673 (6th Cir. 2011) .....................................................................................3

*Scott v. Clay Cnty, Tenn.*,
    205 F.3d 867 (6th Cir. 2000) ....................................................................................13

*Shaffer v. Kalamazoo Cty.*,
    No. 1:16-CV-883, 2017 WL 8894657 (W.D. Mich. Sept. 12, 2017) ....................4, 7

*Terry v. Tyson Farms, Inc.*
    604 F.3d 272 (6th Cir. 2010) .....................................................................................3

*Vereecke v. Huron Valley School Dist.*,
    609 F.3d 392 (6th Cir. 2010) .....................................................................................7

**Statutes**

42 U.S.C. §1983...................................................................................................4, 5, 10

Mich. Comp. Laws § 691.1407(2) ................................................................................13

**Other Authorities**

U.S. const. amend. XIV .................................................................................................11

Federal Rule of Civil Procedure 12(b)(6) ................................................................2, 14

## I.  BACKGROUND

Plaintiff, Ambiance GR LLC, is a Michigan limited liability company that operated a night club venue known as Ambiance GR Kitchen & Lounge at 106 Pearl St. NW in downtown Grand Rapids.  *2nd Am. Compl.*, ECF No.24, PageID.270 at ¶¶1, 3.  The night club ("Ambiance") opened on or around New Year's Eve 2021 and closed in November 2022 – less than a year later.[1] During the short time it was open, the area outside the club – and, indeed, the downtown area in general[2] – was plagued with security issues, including gun violence, loitering, and patrons blocking the street. (*Id.*)

After the club opened, Jonathan Jelks, who holds himself out to be one of the owners of Ambiance, demanded that the Grand Rapids Police Department (GRPD) become Ambiance's private security by setting up a visible police presence every weekend around closing time.  The City's representatives worked with Ambiance to provide proactive solutions to mitigate the risk of violence, including setting up a GRPD camera trailer outside the club, coordinating with Ambiance's privately-hired security team, and the use of parking barricades.  However, the GRPD was not in the business of providing private corporate security, nor did it have the resources to provide dedicated staffing for several hours each night, several nights each week to Ambiance. The City's inability to do as demanded had nothing to do with the race of the ownership of the

---

[1] https://www.crainsgrandrapids.com/news/small-business/gr-nightclub-ambiance-permanently-closes-owners-cite-persistent-safety-issues-in-downtown/

[2] Ambiance has acknowledged that "other neighboring establishments" were experiencing public safety issues. See e.g. ECF No. 24, PageID.282 (¶39(c)). Ambiance also concedes that there was "an urgent need for increased safety measures in downtown Grand Rapids," generally. ECF No. 24-1, PageID.296 (¶92). See also *Id* (¶91) (referencing a FOX 17 news story in which FOX 17 "spoke with over a dozen businesses that voiced the need for more police and safety measure.") As Ambiance points out, "This is one of many news reports centered around public safety concerns from 2022." ECF No. 24-1, PageID.296 (¶93). Thus, it is apparent that the public safety concerns, particularly the need for more police, were widespread throughout the downtown area.

club.

Despite the City's efforts at collaboration, and through no fault of the City and not at the direction of the City, the night club's owners decided to close in November 2022.  Following its closure, Ambiance filed a claim with the City's Risk Management office, seeking compensation for "collateralization and loss of business revenue" in the amount of $2,500,000 – without providing any legal basis or factual support for such a claim. See, ECF No. 9-1, PageID.48. As with the current Complaint, Ambiance alleged that the City was grossly negligent and discriminatory, and somehow that resulted in the business's closure. *Id*. That claim for property damage was denied, so now Ambiance has filed this lawsuit.

## II.  LAW AND ARGUMENT

### a.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint is required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), citing Fed. R. Civ. P. 8(a)(2) (additional citations omitted).

Generally, on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (internal quotations omitted).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal

2

conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.* 604 F.3d 272, 276 (6th Cir. 2010).

The complaint must contain more than mere labels, conclusions, or formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct.1955, 167 L.Ed.2d 929 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555).

The complaint must allege facts that give rise to claims that are plausible, that when accepted as true, "raise a right to relief **above a speculative level**." *Twombly*, 550 U.S. at 555 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for **more than a sheer possibility** that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (emphasis added). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 677). If the complaint merely alleges facts consistent with liability it falls short of plausibility. *Iqbal*, 556 U.S. at 678.

Also, pursuant to Rule 10(c), the Court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. Of Richmond,* 641 F. 3d 673, 681 (6th Cir. 2011) (internal quotations omitted).

### b.  The City of Grand Rapids is entitled to dismissal.

Municipalities may not be sued for violation of a constitutional provision pursuant to 42 U.S.C. §1983 under a theory of *respondeat superior* for an injury inflicted by its employees or agents.  *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Instead, the government as an entity can be held responsible under §1983 only where the entity's own policy, practice, or custom inflicts the injury.  *Id.* at 694.  A municipality may only be liable for the "action[s] for which the municipality is actually responsible."  *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (internal citations omitted). In this regard, the municipality's own actions must be the "moving force" behind the violation of law for it be held liable.  *Monell*, 436 U.S. at 694. Moreover, the Plaintiffs must show that, through the municipality's own deliberate conduct, the municipality's action was the "moving force" behind the alleged injury.  *Bd. Of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed.2d 626 (1997), citing *Monell, supra.*

To establish municipal liability, a plaintiff bears the burden of pleading facts that "'(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injury was incurred due to the execution of that policy.'" *Shaffer v. Kalamazoo Cty.*, No. 1:16-CV-883, 2017 WL 8894657, at *3 (W.D. Mich. Sept. 12, 2017), report and recommendation adopted, No. 1:16-CV-883, 2017 WL 4271104 (W.D. Mich. Sept. 26, 2017), quoting *Vereecke v. Huron Valley School Dist.,* 609 F.3d 392, 403 (6th Cir. 2010) (additional quotations omitted).[3]

Further, to state a claim based on an illegal policy or custom a plaintiff must demonstrate "one of the following: (1) the existence of an illegal official policy or legislative enactment; (2)

---

[3] A copy of *Shaffer* is attached as **Exhibit A**.

4

that an official with the final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d. 462, 478 (6th Cir. 2013).

Ambiance acknowledges this requirement in paragraph 16 of the Second Amended Complaint. ECF No.24, PageID.275. Yet, it then alleges only that:

17.    It is obvious there is the existence of an inadequate training and supervision situation that exist [sic] since Lt. Dean spoke for Grand Rapids Police Officers when he openly indicated [sic] under no circumstances would GRPO support Black or Hip Hop events[.]

18.    It is obvious since City Manager was given notice of this sentiment expressed by Lt. Dean and nothing changed in the behavior of GRPO toward Plaintiffs [sic].

19.    In addition, it is clear that the existence of a custom of tolerance or acquiescence of federal rights violations exists here as well. City Commissioners, the City Manager, and other city staff, including GRPD rank and file, are aware of this police officer culture and racially motivated conspiracy to deny assistance to Black and Hip Hop events for no other reason except that they are Black and the Black community won't give a pass or praise the actions of the GRPD's actions [sic] against Patrick Lyoya.

At best, these are conclusory allegations masquerading as facts. Put another way, they are no more than "threadbare recitals of the elements" that Ambiance must prove, "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Therefore, they will not suffice to adequately state a claim, *Id,* and, for this reason alone, the Court may justifiably find that Ambiance has failed state a *Monell* claim against the City.

Beyond that, however, these allegations, and indeed the Second Amended Complaint as a whole, are legally deficient for several additional reasons. First, the City cannot be held vicariously liable for the actions of an individual employee, such as Lt. Dean. *Monell*, 436 U.S. at 691. Instead, the City may only be held liable under §1983 where the City's own policy, practice, or custom "inflicts the injury." *Id*. at 694.  Second, Plaintiff has stated no facts to show a policy of inadequate

training or supervision. Finally, Plaintiff has failed to adequately plead a "federal rights violation" for equal protection.

    1.  <u>The Statement of Lt. Dean Cannot Impose Liability on the City</u>

Ambiance's most detailed allegation regarding its interaction with Lt. Dean is the following:

> - Grand Rapids Police Officers have discriminated against Ambiance GR, its customers and owners because they are Black.  April 19th, 2021 [sic] Jonathan emailed Lt. Dean to request a Special Events Permit for public safety[.] Alvin Hills IV met with Lt. Dean and Evette Pittman 4/19/22 @ 1pm virtually. Alvin met with Lt. Dean City of GR Special Events Manager Evette Pittman to discuss the process for Ambiance to apply for special events security as instructed by City Manager Mark Washington. Lt. Dean expressed that he doesn't have the staffing available to cover this request this week or the following weeks to come. He instructed that if he posted this overtime opportunity no officer would accept due to his officers not having the appetite to police "these types of events" alluding to African American/Hip Hop based events in the wake of the recent killing of Patrick Lyoya. Alvin requested for Lt. Dean to allow Ambiance to request security services and see if any offers were accepted. Evette Pittman added that GRPD has more than enough officers to secure DeVos and Van Andel through the Convention Arena Authority and asked could the department approach it in a similar manner. Lt. Dean was adamant that none of his officers would accept, so there's no reason for us to submit a formal special events security request. Due to the climate created after the Patrick Lyoya shooting [on April 4, 2022], Lt. Dean expressed that any African American/Hip Hop led event happening [sic] GRPD would not be interested in securing those spaces. He expressed that the current perception by the public and anticipated African American community retaliation for the killing of Patrick Lyoya would not be a space his officers would be interested in securing. Lt. Dean discouraged Ambiance GR from submitting a formal request. Alvin reported this back to Mark Washington.

ECF No. 24-1, PageID.286.

    Accepting Plaintiff's allegation as true for purposes of this motion, Lt. Dean's statement is that of an employee of the City. As noted above, the City cannot be held vicariously liable for the actions of its individual employees. *Monell*, 436 U.S. at 691. Rather the City may only be

held liable where its own policy, practice, or custom "inflicts the injury." *Id*. at 694. In this regard, Ambiance has at least two problems.

First, while Ambiance alleges that Dean was speaking for the "entire police force," ECF No. 24-1, PageID.287, its own pleadings contradict this theory. Ambiance's other allegations make clear the Chief of Police was the final policy maker for the police department. *See,e.g.,* ECF No. 24, PageID278-279, (¶ 31) (asking that the Chief be held jointly liable with the City because "the Chief made police policy for the City" and "because he failed to train and discipline his force and because he ratified the illegal acts through his failure to investigate, determine and punish the individual officers concerned."). The problem for Ambiance in this regard is that there is no allegation that Lt. Dean's comments were reported to the Chief or that the Chief became otherwise aware of Lt. Dean's comments through Ambiance or through Mark Washington (who allegedly did hear of these events). Thus, Ambiance failed to establish that Lt. Dean's attitude reflected or became the City's "own policy, practice or custom," because it failed to plead any facts that would "connect the policy to the municipality" as required by *Shaffer, supra,* at *3 and *Vereeche*, 609 F.3d at 403.

Second, even if Ambiance could connect Lt. Dean's comments to the City, it fails to plead facts to show that its "particular injury was incurred due to the execution of that policy." *Shaffer*, *supra*, at 2; *Vereeche*, 609 F.3d at 403. Ambiance did not plead that it acted on Lt. Dean's comment (i.e., that it refrained from filing for a special events permit). Nor did it plead that its Hip Hop event did not take place, or, if it did take place, whether there were, or were not, overtime officers available, or whether any security issues arose in the absence of such officers. Failing to plead

facts to establish causation is fatal at the motion to dismiss stage. *See*, *Lyoya v. Schurr*, Case No. 1:22-cv-1160 (W.D. Mich. 2023) dtd. Aug. 28, 2023, attached as **Exhibit B**. [4]

    2.  <u>Ambiance Fails to Plead Facts to Show Inadequate Training or Supervision</u>

"[T]o show that a municipality is liable for a failure to train its employees, a plaintiff 'must establish that: (1) the City's training program was inadequate for the tasks that officer must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019), quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006). A municipality may be held liable only where there is a "complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is inevitable, or would be properly characterized as almost inevitable to result." *Hayes v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1983) (internal citations omitted).

The Complaint must also plead facts which demonstrate that the City itself – through the actions of its decisionmakers – was "deliberately indifferent" to the adequacy of their training program. *Bd. Of Cty. Comm'r's of Bryan Co. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Deliberate indifference "imposes a stringent standard of fault requiring proof that a municipal officer disregarded a known or obvious consequence of his actions."  *Id.* Therefore, a complaint must identify a "risk of a constitutional violation arising as a result of the inadequate training that is plainly obvious." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

---

[4] Judge Maloney's Opinion and Order in *Lyoya* may also be found on PACER at case no. 1:22-cv-01160-PLM-SJB ECF No. 39, PageID.461.

Here, Ambiance did not plead a "complete failure to train" or that the training that did exist was "so reckless or grossly negligent that future police conduct [was] inevitable." *Hayes* 668 F.2d at 874. In fact, Ambiance has not identified any training at all, much less training that was legally deficient. Nor has Ambiance pled that the City's decision makers were deliberately indifferent to this unidentified inadequacy. In fact, Ambiance has not alleged any facts to show that any decision maker knew or should have known, of any problem with its (unidentified) training for any reason. For example, Ambiance has not alleged any prior or repeated constitutional violations that would have put the City on notice of an inadequacy in the training provided to officers. *Ouza, supra v. City of Dearborn Heights, Michigan, 969 F.3d 265, 287.* [5]

Further, Ambiance has not pled how any identifiable inadequacy was closely related to or caused a constitutional deprivation or injury. *Jackson*, 925 F.3d at 834. Failure to plead causation between "inadequate training" and a violation of equal protection, is fatal to a complaint under existing law. *See, Lyoya v. Schurr,* Case No. 1:22-cv-1160 (W.D. Mich. 2023), dtd. August 28, 2023. **Exhibit B**.

In *Lyoya,* Judge Maloney found that a complaint was fatally deficient with respect to a municipal liability claim where it failed to allege specific facts establishing causation. *Lyoya, supra*, at 20 ("Because Plaintiff has failed to plead sufficient facts supporting the conclusion that the City's lack of training was the cause of the deprivation of Plaintiff's constitutional rights, the

---

[5] Multiple incidents are clearly required for this purpose. For example, the Sixth Circuit has found that sufficient evidence of a clear and persistent pattern of illegal activity existed where fourteen similar incidents had occurred, *Leach v. Shelby Cty., Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989), but that a county's knowledge of only three similar incidents could not establish notice of habitually unconstitutional conduct[,]" sufficient to establish a *Monell* claim. *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014). Here, Ambiance fails to allege *any* prior similar incidents.

court finds that Plaintiff's *Monell* claim for failure to train does not survive the City's motion to dismiss.").

Ambiance's complaint here is similarly flawed.  Instead of identifying facts which would support causation, Plaintiff merely alleges that it is "obvious" the City failed to train and supervise its officers. ECF No. 24, PageID.275 (¶17).  Ambiance makes no allegations as to how this "obvious" (but unidentified) training failure led to any injury here.

Since Ambiance has not pled sufficient facts to support a conclusion that the City had a lack of training or supervision or that such a lack was the cause – the moving force – of the deprivation of its constitutional right, Ambiance has failed to state a claim for failure-to-train municipal liability against the City under *Monell*.

   3.   Plaintiff Fails to State an Equal Protection Claim

Although the Complaint is lengthy, the factual allegations pled in support of Plaintiff's equal protection claim under 42 U.S.C §1983 are minimal.  In general, these can be distilled down into an allegation that Ambiance was treated differently than "white businesses" when requesting police services.

For example Ambiance alleged that when it "requested police presence during closing hours" and "increased police presence[,]" such service "was not provided," ECF No. 24, PageID.281 (¶36). In contrast, Ambiance complains that the City provides "steady and increased patrol and police traffic control activity to white owned businesses… including the Van Andel Arena and Devos Place Center during the let out periods of business hours." *Id* ¶37. It also alleges that the City closed the Blue Bridge overnight when unnamed "white businesses" complained of

crime there. ECF No. 24 PageID.282-283 (¶42).[6] These allegations are not sufficient to state an equal protection claim.

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws[,]' which is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Wyoming*, 658 F. Supp 546, 568 (W.D. Mich. 2023), quoting, U.S. Const. amend. XIV and citing, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted).

"The threshold element of an equal protection claim is disparate treatment." *Brown,* 658 F. Supp at 568, citing, *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) and *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  When a plaintiff brings an equal protection claim, he must identify a comparator – who is "similarly situated" in "all relevant respects."  *Id.* (internal quotations and citations omitted).

Ambiance (which is an L.L.C) alleges that its ownership is "Black," ECF No. 24, PageID.280 (¶¶33-34), although it never specifically identifies who its owners or investors are.

---

[6] Ambiance makes general allegations that "white businesses" were treated more favorably than Ambiance. *See generally*, ECF No. 24, PageID.282-283 (¶¶40-42). But the only "businesses" it actually identifies are the Van Andel Arena and DeVos Place Center. ECF No. 24, PageID.281 (¶37).

The only specific comparators Ambiance appears to name are the Van Andel Arena and "Devos Place Center." ECF No. 24, PageID.281 (¶37). It is unclear what type of business *entities* these are as Ambiance failed to plead any facts in this regard. More importantly, Ambiance offers no factual allegations whatsoever to establish who (or what) the "owners" of these purportedly comparable businesses actually are. Instead, Ambiance alleges only (by way of pure speculation and conclusory assertion) that their ownership is "white."  That is plainly not sufficient.

Moreover, Van Andel Arena and "Devos Place Center" (by which Ambiance appears to mean DeVos Performance Hall) are not "similarly situated" in "all relevant respects" as required by the case law. *See, e.g. Brown*, 658 F. Supp at 568. Looking at the capacity and types of events held at each alone makes clear that there are substantial differences between these businesses and Ambiance.  Van Andel Arena has a capacity of approximately 12,000 people and hosts everything from sporting event to major concerts.[7] DeVos Performance Hall "is a 2,543-seat performing arts theater."[8] Ambiance, by contrast, describes itself as "a swanky cocktail lounge & small live entertainment venue."[9]

Thus, while Ambiance alleges that these businesses are "white" owned and operated, it does so in a purely conclusory and insufficient fashion. Ambiance then compounds the problem with an utter failure to allege any facts to show that these businesses are "similarly situated" in "all relevant respects" such that this Court – or anyone else – could consider them as comparators for purposes of an equal protection analysis. Consequently, Plaintiff has failed to state a viable equal protection claim.

---

[7] https://www.vanandelarena.com/p/visit/van-andel-arena-faqs
[8] https://www.devosperformancehall.com/p/about/devos-performance-hall
[9] https://www.instagram.com/ambiancegr/

Without an underlying constitutional violation, there can be no liability under *Monell*. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Scott v. Clay Cnty, Tenn*., 205 F.3d 867, 879 (6th Cir. 2000). *Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) (If it is determined that "no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be liable for its failure to train or for developing a custom that led to a constitutional violation.") Thus, the City is entitled to dismissal of Ambiance's *Monell*-based claims in Count I in their entirety.

### c.   Plaintiff has failed to state a viable cause of action for "Gross Negligence."

Ambiance's Count II is for gross negligence.[10] This claim too fails as a matter of law.

In Michigan, "gross negligence" is not an independent cause of action. *Brent v. Wayne Cnty. Dept. of Hum. Servs.,* 901 F.3d 656, 700-1 (6th Cir. 2018). "[E]stablishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, [but] it is not an independent cause of action." *Bletz v. Gribble,* 641 F.3d 743, 756 (6th Cir. 2011). *See also, Jackson v. Lubelan,* 657 Fed. Appx. 497 (6th Cir. 2016), holding that the plaintiffs have "misguidedly tried to state a claim under Michigan's immunity statute for negligence claims against public officials, Mich. Comp. Laws § 691.1407(2), which does not itself create a private cause of action."

Here, the Second Amended Complaint purports to allege "gross negligence" but fails to state a claim upon which relief can be granted. *Brent, supra.* As noted above, a determination that an individual official's conduct amounted to "gross negligence" is merely a prerequisite to avoiding governmental immunity for an underlying state law tort claim against *that individual*

---

[10] Paragraph 49 of the Second Amended Complaint appear to recite the events Ambiance believes makes up its gross negligence claim ECF No. 24-1, PageID.284. Ambiance then spends another 18 pages repeating its various complaints in one form or another.

*official.  Bletz,* 641 F. 3d at 756. The Second Amended Complaint, however, has no underlying state law claim and names only one defendant – the City itself – not an individual official (for whom the concept of "gross negligence" *would* be needed to avoid governmental immunity). Therefore, Count II of the Second Amended Complaint should be dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).

### III. CONCLUSION

THEREFORE, Defendant, the City of Grand Rapids, requests this Honorable Court to enter an Order Dismissing, which prejudice, Plaintiff's claims against it, and to grant such other relief as may be just and proper under the circumstances.

Respectfully submitted,

THE CITY OF GRAND RAPIDS,

Dated: <u>March 21, 2024</u>          By:  <u>*/s/ Elizabeth J. Fossel*          </u>
Elizabeth J. Fossel (P41430)
Director of Civil Litigation
City of Grand Rapids, Dept. of Law
300 Monroe Ave. NW, Ste. 620
Grand Rapids, MI 49503
(616) 456-3099
efossel@grand-rapids.mi.us

**CERTIFICATE OF COMPLIANCE WITH W.D. MICH. L. CIV. R. 7.2(b)(ii)**

This Brief was prepared by the use of Microsoft Word 365 and contains 4,321 words, excluding the case caption, cover sheets, table of contents and authorities, signature block, attachments, exhibits, affidavits, and other addenda. This word count was generated by that application and the count provided by the application is relied upon in conformance with L. Civ. R. 7.2(b)(i).

Respectfully submitted,

Dated: March 21, 2024          By: */s/ Elizabeth J. Fossel*
Elizabeth J. Fossel (P41430)
Director of Civil Litigation

15