UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBIANCE GR and JAMAL CHILTON,

    Plaintiffs,

v.

CITY OF GRAND RAPIDS, et al.,

    Defendants.
_____/

Case No. 1:23-cv-1335

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff Ambiance GR initiated this lawsuit against Defendant City of Grand Rapids ("the City") and others in state court. The City, now the sole remaining Defendant, removed the matter to this Court and filed the pending Motion to Dismiss (ECF No. 28). For the following reasons, the Court grants the motion as to the federal claim in Count I and otherwise dismisses the motion as moot and remands this matter to state court.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Ambiance GR is a Black-owned Michigan limited liability company that operated a nightclub venue known as Ambiance GR Kitchen & Lounge in downtown Grand Rapids, Michigan (2d Amend. Compl. [ECF No. 24] ¶¶ 1, 3, 33, 56, 86, 104, 106, & 111). According to Plaintiffs, Ambiance GR hired two private security services: Phoenix Security in December 2021 and Top Breed Security Service in March 2022 (*id.* ¶ 43). Plaintiffs allege that the Grand Rapids Police Department (GRPD) "restricted the private security company's area of security to inside Ambiance GR" (*id.*). Plaintiffs allege that the security companies "were instructed by Grand

Rapids Police officers that the Security Company staff weren't allowed to provide any services outside the walls of Ambiance GR, Grand Rapids Police made no effort to police the outside area of Ambiance GR [e]ven though Ambiance GR requested that GRPD come during close of business hours as a deterrent to possible violence" (*id.* ¶ 44). Plaintiffs allege that "[w]hen police responded to a criminal complaint(s), even though the issue was not associated with Ambiance GR, the police associated the criminal complaint with Ambiance GR[,] [e]ven though Ambiance GR had nothing to do with the criminal Complaint" (*id.* ¶ 45).

According to Plaintiffs, they were "openly told" by GRPD Lieutenant Patrick Dean that "Grand Rapids Police Officers would not assist with Hip Hop/Black events since the death of Patrick Lyoya" (*id.* ¶ 5). More specifically, Plaintiffs allege that "Police Officers will not assist Hip Hop and Black events because the Black community isn't supporting the police after Patrick Lyoya, a YOUNG BLACK MAN, was killed by being shot, at point blank range, in the back of the head by a Grand Rapids Police Officer" (*id.* ¶ 14) (emphasis in original).

Plaintiffs first claim that they were "discriminated against … and [their] 14th Amendment rights [were violated] by [the City] denying equal protection of the law and openly requiring Plaintiffs to report the presence of a gun, as a required condition, prior to Grand Rapids Police Officers (GRPO) responding to any 911 calls or calls for assistance or calls to report unlawful behavior that Plaintiffs witness because Plaintiffs [sic] are African American" (*id.* ¶ 1). Plaintiffs allege that "when similarly positioned white owned downtown businesses requested the same increase[d] patrol services, that Ambiance GR was seeking, the City found a way to provide that increased level of police protection and services that it had denied Ambiance GR" (*id.* ¶ 40).

Second, Plaintiffs claim that "either Lt. Dean … or the Police Chief and the City Manager were … grossly negligent by refusing or simply failing to act" and/or "refusing to respond to calls

2

for help by Plaintiffs and staff until someone could claim to have seen a gun present" (*id.* ¶ 5). Plaintiffs allege that "[a]s a result, Plaintiffs lost income, were forced to close the business, and have experienced serious mental stress over the collapse of the relationship with lenders associated with the financing of Ambiance GR to the tune of over a million dollars" (*id.* ¶ 1).

### B. Procedural Posture

On or about December 20, 2023, Plaintiff Ambiance GR initiated this action in state court against the City, the GRPD, and unspecified GRPD officers (State Court Compl., ECF No. 1-3). Plaintiff Ambiance GR alleged "Discrimination" under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 (Count I) and "Gross Negligence" under state law (Count II) (*id.*). On December 21, 2023, the City removed the case to this Court based on federal-question jurisdiction (Notice of Removal, ECF No. 1).

On February 8, 2024, Plaintiff Ambiance GR filed a First Amended Complaint, alleging the same two claims, eliminating the GRPD as a named Defendant, and adding the "Grand Rapids City Manager" as a Defendant (ECF Nos. 15–18).

On February 29, 2024, Plaintiffs Ambiance GR and Jamal Chilton[1] jointly filed a Second Amended Complaint, eliminating the "Grand Rapids City Manager" and "Unknown Part(y)(ies) #1 (named as Grand Rapids Police Officers)" as named Defendants and adding the "Grand Rapids Police Chief" as a Defendant (ECF No. 24). On March 11, 2024, the parties agreed to a Stipulation, which this Court entered, dismissing the "Grand Rapids Police Chief" as a Defendant (ECF Nos. 26–27).

---

[1] The Court notes that while Chilton is named as a Plaintiff in the caption, the Second Amended Complaint does not reference him therein.

On March 21, 2024, the remaining Defendant—the City—filed the motion to dismiss at bar (ECF No. 28). Plaintiffs filed a response in opposition on April 22, 2024 (ECF No. 32). On May 9, 2024, the City filed a reply (ECF No. 36). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

The motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' … it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint

4

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt, supra.*

### B. Discussion

The Court turns first to considering the City's arguments for dismissal of Plaintiffs' federal claim against it in Count I, which forms the basis for the Court's original jurisdiction over the subject matter of this case. The City argues that Count I is properly dismissed because Plaintiffs' allegations are insufficient to state a § 1983 equal protection claim where Plaintiffs offer "no factual allegations whatsoever" about comparably situated businesses with non-minority owners (ECF No. 29 at PageID.325–326). Additionally, the City emphasizes that it cannot be held vicariously liable for the statements or actions of an individual officer, and the City argues that Plaintiffs have not adequately connected Lieutenant Dean's statements or actions to any theory of liability against the City (ECF No. 29 at PageID.319–322).

In response, Plaintiffs point out that they alleged that "the City, 'as matter of custom, policy and practice, … failed to adequately discipline, train, screen, supervise, transfer, counsel or otherwise direct or control police officers concerning the rights of citizens with mental disabilities with whom the police come into contact[.]' (Compl. ¶ 37)" (ECF No. 32 at PageID.375).  And Plaintiffs contend that they have adequately demonstrated the City's "indifference to the racial culture in the GRPD" (*id.* at PageID.375–376).[2]

In reply, the City points out that paragraph 37 of Plaintiffs' Second Amended Complaint does not contain the allegation as quoted by Plaintiffs in their response brief, nor does that statement (or the topic of mental disability) appear anywhere else in the Second Amended Complaint (ECF No. 36 at PageID.404).

The City is entitled to dismissal of Count I.

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]"  42 U.S.C. § 1983.  Section 1983 does not confer substantive rights but merely provides a statutory vehicle for vindicating rights found in the United States

---

[2] In their response brief, Plaintiffs reference certain "sworn affidavits of the factual events" (ECF No. 32 at PageID.375–376, citing ECF Nos. 17-1, 17-3, 17-1, 16-1, 16-3, & 17-2).  The exhibits are a collection of typewritten notes, email exchanges, text messages, and news articles, and it is unclear which facts are being attested or by whom.  In any event, the exhibits were not attached to Plaintiffs' Second Amended Complaint, which is the operative complaint in this case, *see In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013), and the Court has not relied on the exhibits in deciding the City's motion to dismiss.  The City moved to strike the exhibits (ECF No. 33), but the Court finds that action to be unnecessary.  The Sixth Circuit has recently reiterated that when "[f]aced with matters outside the pleadings, district courts have 'complete discretion' to accept them (and treat the motion as one for summary judgment) or ignore them (and treat the motion as one to dismiss)." *Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 688 (6th Cir. 2024) (citation omitted).  "When a district court ignores such matters, nothing requires it to take the drastic step of striking them from the record." *Id.*  Therefore, the Court will simply dismiss as moot the City's motion to strike, as well as Plaintiffs' related motion for an extension of time to respond to the motion to strike (ECF No. 37).

Constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1160 (6th Cir. 2021). To bring a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted).

Here, Plaintiffs allege that the City deprived them of their right to equal protection under the Fourteenth Amendment. "The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws[,]' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XI). "To state an equal-protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted). "The threshold element of an equal-protection claim is disparate treatment." *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). To be "similarly situated" for purposes of an equal-protection claim, the plaintiff and the comparator must be alike "in all relevant respects." *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Plaintiffs allege that Ambiance GR's ownership is "Black," *see* 2d Amend. Compl. ¶¶ 33–35, albeit without ever specifically identifying the owners. And Plaintiffs generically reference "White owned businesses." *See id.* ¶¶ 40–42. The only specific comparators Plaintiffs appear to name are the "Van Andel Arena" and "Devos Place Center," *see id.* ¶ 37, again without specifically

7

identifying the owners, let alone their races. More importantly, Plaintiffs fail to supply any factual allegations that could support the inference that the nightclub is "similarly situated" in "all relevant respects" to an arena or a convention center.[3] Without such facts, Plaintiffs have failed to "nudge[ ] their claim[ ] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs' allegations must indicate more than a "sheer possibility" of a constitutional violation. *Id.* at 556.

Even assuming arguendo that Plaintiffs plausibly allege a violation of a constitutional right in support of their § 1983 claim, Plaintiffs' allegations do not plausibly connect that alleged harm to the City. A municipality is a "person" under § 1983 and so "can be held liable for constitutional injuries for which it is responsible." *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 616 (6th Cir. 2022) (citing *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978))). However, a municipality cannot be held liable "under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691). Rather, municipal liability under § 1983 depends on whether the plaintiff's constitutional rights have been violated as a result of "a 'policy' or 'custom' attributable" to the local government. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).

"There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff can look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights

---

[3] The City asserts that the substantial difference in capacity among the three businesses would alone appear to defeat any reasonable comparison (ECF No. 29 at PageID.326).

8

violations." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). The allegations in Plaintiffs' Count I do not support a plausible § 1983 claim against the City under any of these theories.

First, Plaintiffs do not identify any legislative enactments or official policies of the City. Second, Plaintiffs do not identify actions taken by officials with final decision-making authority. While Plaintiffs describe statements by Lieutenant Dean, the Second Amended Complaint itself is clear that the Chief of Police, not Lieutenant Dean, is the final policy maker for the department. *See, e.g.*, 2d Amend. Compl. ¶ 31 ("[T]he Chief made police policy for the City" and "failed to train and discipline his force and … ratified the illegal acts through his failure to investigate, determine and punish individual officers concerned").

Third, regarding a policy of inadequate training or supervision, Plaintiffs allege merely that "[i]t is obvious there is the existence of an inadequate training and supervision situation that exist [sic] since Lt. Dean spoke for Grand Rapids Police Officers when he openly indicated [sic] under no circumstances would GRPO support Black or Hip Hop events" (2d Amend. Compl. ¶ 17). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiffs were required to show (1) that the City's training was "inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 323 (6th Cir. 2023) (citation omitted). Plaintiffs do not identify any training at all, much less training that was legally deficient.

Fourth, Plaintiffs do not plausibly allege a custom of tolerance or acquiescence of federal rights violations. "[A] custom-of-tolerance claim requires a showing that there was a pattern of

9

inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Here, Plaintiffs allege merely that "it is clear that the existence of a custom of tolerance or acquiescence of federal rights violations exists" (2d Amend. Compl. ¶ 19). Plaintiffs allege that the "City Commissioners, the City Manager, and other city staff, including GRPD rank and file, are aware of this police officer culture and racially motivated conspiracy to deny assistance to Black and Hip Hop events for no other reason except that they are Black and the Black community won't give a pass or praise the actions of the GRPD's actions [sic] against Patrick Lyoya" (*id.*). Plaintiffs cannot meet their pleading burden by simply stating that a custom exists. Plaintiffs' Count I supplies no factual basis from which this Court could reasonably infer that the City is liable for the alleged constitutional violation. Again, to survive a motion to dismiss under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The City requests that the § 1983 claim against it be dismissed with prejudice (ECF No. 29 at PageID.328), and the Court agrees. Plaintiffs have had repeated opportunities to amend their original Complaint and do not request—let alone file a motion in support of—a third opportunity to amend. *See, e.g., Golf Vill. N., LLC v. City of Powell, Ohio*, 14 F.4th 611, 624 (6th Cir. 2021) (holding that a district court does not abuse its discretion in dismissing an amended complaint with prejudice where a plaintiff never moves for leave to file a second amended complaint); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627–28 (6th Cir. 2019) (same); *see also Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021) ("Dismissal with prejudice and without leave to amend is [ ] appropriate when it is clear ... that the complaint could not be saved by an amendment.").

Having resolved the federal claim against the City, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' remaining claim in Count II. *See* 28 U.S.C. § 1367(c)(3); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ("[T]his Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)). This case is properly remanded to the state court from which it was removed.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the City's Motion to Dismiss (ECF No. 28) is GRANTED IN PART as to Count I and is DISMISSED AS MOOT IN PART as to Count II.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 1367(c)(3), that this Court declines to exercise supplemental jurisdiction over Plaintiffs' claim in Count II.

**IT IS FURTHER ORDERED** that the Motion to Strike (ECF No. 33) and the Motion for Extension of Time (ECF No. 37) are DISMISSED as moot.

**IT IS FURTHER ORDERED** that this case is remanded to the state court from which it was removed.

Dated: October 15, 2024        /s/ Jane M. Beckering
                               JANE M. BECKERING
                               United States District Judge